**BROWNE v. HEETER.**

No. 43715.

Supreme Court of Missouri.

Division No. 1.

May 10, 1954.

Charles M. Shaw and Wayne C. Smith, Jr., Clayton, for appellant.

Moser, Marsalek, Carpenter, Cleary & Carter, F. X. Cleary, J. C. Jaeckel, C. M. Kirkham, St. Louis, for respondent.

LOZIER, Commissioner.

Plaintiff-appellant (herein called plaintiff) sued for $25,000 for personal injuries allegedly resulting from the negligence of defendant-respondent (herein called defendant). Plaintiff alleged that he sustained his injuries under these circumstances: "That on or about the 12th day of June, 1952, the plaintiff was riding in an automobile which was in the exclusive control of defendant and being driven and operated by defendant in an easterly direction over and along Manchester Road at or near its intersection with Lindbergh Boulevard, and that defendant negligently

caused and permitted said automobile to leave said concrete slab then and there free from travel and unobstructed and to collide with a tree and to turn over." The verdict was for defendant. Plaintiff appealed from the ensuing judgment.

Plaintiff's sole allegation of error is the giving of defendant-requested, verdict-directing Instruction No. 2. Plaintiff contends that the instruction is erroneous in several particulars. Defendant contends that the instruction is "correct in all respects" and insists that, in any event, his motions for a directed verdict should have been sustained because: "Although plaintiff pleaded general negligence, he introduced evidence showing the specific cause of the collision and was not entitled to rely upon the ipsa loquitur doctrine."

About 12:30 o'clock on the night of June 12-13, 1952, defendant was driving an automobile eastward on Manchester Road in St. Louis County. Plaintiff, the other occupant of the car, was asleep. The car collided with a tree on the highway shoulder, 5-6 feet south of the edge of the pavement and 1300-1400 feet west of the Manchester Road-Lindbergh Boulevard (Kirkwood Boulevard or Highway 50). Plaintiff sustained injuries in the collision.

East of the tree, Manchester's grade is downward for 100-150 feet and then upward to the intersection. West of the tree, the grade is upward (for "at least 500 feet," according to plaintiff's witness, and between one-half and one-quarter of a mile, according to defendant) to the crest of a hill. At the collision point, Manchester has four 10-foot travel lanes, separated by lines on the pavement. Only a painted "center line" separates the two westbound and the two eastbound lanes. On Manchester west of Lindbergh is a concrete "island," the "point" of which is 320 feet west of the "base" at Lindbergh's (projected) west line. The center line, dividing the westbound and eastbound lanes, extends west from the island's point. The island, recently constructed, was surrounded by barricades upon which were lighted flares and red lanterns. The night was clear and the pavement was dry.

Plaintiff testified that he and defendant drove out to Castlewood, swam in the Meramec, and played ping-pong; they then went to a tavern and drank some beer; when they left the tavern about 11:30, defendant drove the car and plaintiff went to sleep in the front seat. Neither he nor defendant were drunk; if defendant had been drunk he (plaintiff) wouldn't have gone to sleep. Plaintiff had had no cause to criticize defendant's driving; he felt so confident that defendant was capable of driving properly that he went to sleep immediately after getting into the car at the tavern. He did not know how the accident happened. The next day, when they both were in the county hospital, defendant told him (plaintiff) that he (defendant) did not know what happened. Two or 3 days later, defendant told him (plaintiff) that the car hit the tree, turned over, skidded into the ditch, and was demolished.

As a part of his case, plaintiff used defendant's deposition in which defendant testified: As he approached Lindbergh, "I saw car lights coming toward me, and I swerved to go to the shoulder and "that was it"; he was traveling about 45 m.p.h. and was in the lane next to the shoulder; he saw the oncoming car's lights, "they looked bright; * * * they were straddling my lane and the second lane on the wrong side of the road; * * * when I first saw him he was on the wrong side of the island coming down Manchester. He must have turned left at Manchester and got on the wrong side of the island and couldn't cross; and I saw him, and figured he would turn over but he never turned over, so I went to the shoulder." He could not tell whether the car was on the wrong side of the road and "realized" that it was when it was about 175-200 feet away. The collision occurred about 15-75 feet west of the island's point. He didn't "start to swerve for the shoulder" when he first saw the other car, because it was "way up * * * I didn't know where he was. I just saw the lights." He "paid no particu-

lar attention to them, no more than an oncoming car. I didn't know whether he was on my side or the center." Defendant didn't have any trouble seeing the road as the other car approached him. "When I saw him I sounded my horn, and when that didn't do any good I swerved to the shoulder." At the time he "decided to swerve," he "had a pretty good idea of where the other car was"; its left side was 3–4 feet in defendant's lane about 175–200 feet away, straddling the dividing line between the two eastbound lanes.

Ralph Guyer (formerly Sergeant, City of Kirkwood Police Department) testified that after he helped get plaintiff and defendant out of the car, defendant told him, "I saw something cross in front of me, a dog or something."

Such was plaintiff's evidence (other than medical). Defendant took the stand and testified substantially as he had in his deposition. In addition, he stated that as he drove east, he could see the Lindbergh-Manchester intersection "about a half-mile or a quarter of a mile" away. Asked what was his "first knowledge of anything unusual about to occur," he replied: "I saw headlights, but I don't believe they were unusual until you got closer; until I saw he was apparently in my lane and I had to move." He "first realized they were in" his lane when the lights were "from where you (his counsel) are to across Forsyth Street" —a distance not shown in the record. He denied having told plaintiff "how it happened" for the reason that he *then* (at the trial) "didn't know how it happened." He denied having "seen a dog" and that he told Sgt. Guyer that he had. "Q. From the time that he was 1000 feet away and you knew he was on the wrong side of the road, what did you do after that? A. It only takes a couple of seconds driving time and then I had to swerve. I just blew my horn and swerved over. That's all I remember. * * * Q. Westwardly, beyond this tree, * * * there are places on that shoulder where, if you knew a man was coming down the highway on the wrong side, and had been that way since he left Kirkwood (Blvd.) that

you could have pulled off, isn't that true? A. Back this way here (west of the tree), that could be, anywhere way back. I can't recollect whether there are any more trees back there or not, sir, but I imagine I did have a space somewhere between there (where he swerved) and out there that I could have pulled off. * * *" He did not know, prior to the collision, that there were trees on the shoulder where he swerved, although he had been over that highway "many, many times prior to the collision."

Defendant's Instruction No. 2 was: "The court instructs the jury that if you believe and find that on the occasion in question, that while defendant was driving his automobile eastwardly on Manchester Road, he was operating the same in the south lane or lane closest to the south shoulder, and, if you further believe and find that when said automobile was a short distance west of Lindbergh Boulevard an automobile was driven westwardly in the south half of Manchester Road by some unknown motorist, and if you further believe and find that the said westbound automobile was being operated partially in the lane in which defendant's automobile was being operated, and, if you further find that defendant in attempting to avoid a collision with the said westbound automobile swerved his said automobile to the right and if you further believe and find the foregoing facts to be true and that defendant was exercising the highest degree of care in operating his automobile at and immediately prior thereto, then plaintiff is not entitled to recover and you will find your verdict in favor of the defendant, and this is true, even though you may believe and find that in so operating his automobile defendant collided with a tree adjacent to said highway and overturned his automobile."

Plaintiff contends the instruction was an "emergency instruction." He argues: "The only excuse for giving an instruction of this type would be that defendant was suddenly confronted with a situation that caused him to act as he did and there are no facts submitted in this instruction to excuse defendant's action upon the basis that

he was confronted with a sudden emergency." Defendant says "the instruction was not intended as an emergency instruction, but one which merely submitted defendant's theory of the accident and one which explained the reason for leaving the highway and was based upon uncontradicted evidence."

█ It is not important whether this is labeled an "emergency" instruction. (Parenthetically, however, we observe that it is difficult to see how defendant could be exonerated of negligence—in the absence of a non-negligent mechanical defect—except that his swerving into the tree under the circumstances was by reason of having been confronted with a sudden emergency.) Whatever the instruction may be called (and momentarily assuming that plaintiff was entitled to a res ipsa submission), the instruction is erroneous because it did not require the jury to find that plaintiff's injuries were not due to any negligence of defendant. This, because the instruction: While requiring the jury to find that defendant swerved to his right to avoid a collision with the other car and that, at the time he swerved and immediately prior thereto, he was exercising the highest degree of care in operating his car, the instruction does not require the jury to find (by general of specific language) that defendant was not negligent in the manner in which he swerved. (It will be recalled that the other car was only 3–4 feet in defendant's lane. The jury could reasonably have found that defendant was negligent in swerving so far to his right as to hit the tree when he had 6–7 feet of pavement and 5–6 feet of shoulder within which to swerve to avoid the collision with the other car without hitting the tree.) Nor does the instruction require the jury to find that defendant was not negligent in failing to act to avoid a collision with the other car at some time before he swerved or "immediately prior thereto." From all the evidence, the jury reasonably could have found that defendant was negligent in failing to take action to avoid a collision with the other car before he reached a place where, to avoid such collision, he had to run into the tree; and that, although defendant swerved to avoid such collision, he should have, in the exercise of the highest degree of care, so swerved as to not hit the tree and thus and thereby injure plaintiff. Instruction No. 2 is so worded (particularly, the "and this is true" clause) as to tell the jury (and we think the jury would so understand) that defendant's liability was solely dependent upon whether, at the time he swerved and "immediately" prior thereto, defendant was negligent. Plaintiff's res ipsa submission required defendant's instruction to negative (either generally or specifically, Rohde v. St. Louis Public Service Co., Mo.Sup., 249 S.W.2d 417, 421[4]), any negligence of defendant, prior or subsequent to the swerve, which the jury could reasonably find was a proximate cause of plaintiff's injury. This Instruction No. 2 failed to do and was thereby fatally erroneous.

█ We have assumed that plaintiff was entitled to a res ipsa submission. We think he was. True, he used defendant's deposition as part of his (plaintiff's) case. We can assume without deciding that defendant's deposition, standing alone, was direct evidence of defendant's precise negligence causing plaintiff's injury. Even so, plaintiff was not bound by defendant's deposition testimony unless it was uncontradicted by plaintiff's other evidence. Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, 298.

█ Instant defendant's deposition statements, read in evidence by plaintiff, were contradicted by plaintiff's other evidence. Plaintiff testified that defendant stated, the day after the accident, that he (defendant) didn't know what happened. Plaintiff's witness Guyer testified that defendant, in explaining what happened, said, ".I saw something cross in front of me, a dog or something." Thus, plaintiff, not being bound by defendant's deposition version of what caused the collision—in the sense of what caused defendant to run into the tree—did not show or prove defendant's precise negligence, if any, causing plaintiff's injury. Plaintiff was entitled to a res ipsa submission. Williams v. St.

Louis Public Service Co., 363 Mo. 625, 253 S.W.2d 97, 101[5, 6].

What we have heretofore said disposes of defendant's contention that plaintiff's evidence showed, as a matter of law, that defendant did "what he was required to do in order to avoid the collision" or that, as a matter of law, he swerved in "a timely manner."

The judgment is reversed and the cause is remanded.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.

All concur.