In the Matter of O. P. CARRILLO,
District Judge.

No. B–5898.

Supreme Court of Texas.

July 14, 1976.

John L. Hill, Atty. Gen., Max Flusche, Asst. Atty. Gen., Austin, for petitioner.

Arthur Mitchell, Austin, for respondent.

DANIEL, Justice.

This case results from a recommendation by the State Judicial Qualifications Commission that O. P. Carrillo be removed as Judge of the 229th Judicial District of Texas, which is comprised of Duval, Starr and Jim Hogg Counties. The proceeding is pursuant to Section 1–a of Article V of the Texas Constitution, which reads in part as follows:

"(6) A. Any Justice or Judge . . may, subject to the other provisions hereof, be removed from office for willful or persistent conduct, which is clearly inconsistent with the proper performance of his said duties or casts public discredit upon the judiciary or administration of justice; or any person holding such office may be censured, in lieu of removal from office, under procedures provided for by the Legislature."

This proceeding was initiated by the Judicial Qualifications Commission on May 2, 1975, in accordance with Section 1–a of Article V and the Rules for Removal or

Retirement of Judges promulgated by this Court.[1] On August 4, 1975, upon request of the Commission, this Court appointed Judge James R. Meyers, District Judge for the 126th Judicial District, as Master to hear evidence on the charges and report thereon to the Commission. Between November 3 and December 30, 1975, the Master heard evidence on 29 days, resulting in a record of 4467 pages and hundreds of exhibits. On January 13, 1976, the Master filed with the Commission findings in which he concluded that a preponderance of the evidence showed Judge Carrillo to be guilty of eleven of the twelve charges of misconduct alleged in the Commission's First Amended Notice of Formal Proceedings. With minor exceptions, the Judicial Qualifications Commission agreed with the fact findings of the Master. On March 24, 1976, the Commission filed its findings and conclusions with this Court recommending that Judge Carrillo be removed from office. On April 23, 1976, Judge Carrillo filed his Petition to Reject the Recommendation of the Commission.

Among several unusual circumstances present in this case is the fact that practically all of the acts of misconduct found by the Master and the Judicial Qualifications Commission occurred before Judge Carrillo was re-elected as District Judge on November 5, 1974; none of such misconduct related to the discharge of his duties as District Judge; and there was a concurrent impeachment proceeding in which a judgment was voted by the Senate of Texas on January 23, 1976, removing Judge Carrillo from office.

Judge Carrillo asserts that this case is moot because of the impeachment, and that in no event should he be removed by this proceeding because the alleged misconduct occurred before he was last elected to the office of District Judge and because none of the alleged misconduct involved performance of his duties as District Judge. We disagree. After reviewing the record of the

1. All references to Rules, unless otherwise specified, are to the Rules for Removal or Retirement of Judges, adopted by the Supreme Court of Texas in 1966, as amended on July 20, 1971, as required by Section (11) of the above mentioned Section 1–a of Article V of the Texas Constitution. See also Article 5966a, V.A. C.S.

facts and the law, we agree with the conclusion of the Judicial Qualifications Commission that Judge Carrillo performed willful acts of conduct which cast public discredit upon the judiciary of the State and that he should be removed from office by this Court, without prejudice to the validity of any earlier removal by the Senate.

### Concurrent Impeachment Proceeding

Ten Articles of Impeachment were voted by the House of Representatives against Judge Carrillo on August 5, 1975, and the Senate of Texas was convened as a Court of Impeachment on September 3, 1975.[2] After hearings on several days, the Senate postponed its trial until the Master had completed his report for the Judicial Qualifications Commission. On January 7, 1976, the Senate voted to incorporate as a part of its record a transcript of the 29 volumes of the Master's record and exhibits.[3] This use of the evidence adduced by the Master was after agreement and stipulation between counsel for the House Managers who were conducting the prosecution[4] and counsel for Judge Carrillo.

On January 23, 1976, the Senate voted impeachment of Judge Carrillo on Article VII by the required two-thirds vote of the Senators present. He was acquitted on Article I by reason of a vote of less than two-thirds of the members present.[5] The remaining eight Articles were dismissed without a decision as to their merits. The Senate's final judgment of January 23, 1976, adopted by a vote of 26 to 1, declared "that O. P. Carrillo . . . be and hereby is removed from office and is disqualified from holding any office of honor, trust, or profit under this State."

### The Impeachment Has Not Rendered This Proceeding Moot

On April 12, 1976, Judge Carrillo filed in this Court a motion to dismiss this proceeding on the grounds that it had been rendered moot by his impeachment. We overruled that motion on May 12, 1976, upon a showing by the Attorney General that the validity of the impeachment proceedings had been denied by Judge Carrillo in cause No. 9318, styled *O. P. Carrillo, Judge, 229th District Court v. Bob Bullock, Comptroller, State of Texas, et al.,* filed in the District Court of Duval County on February 2, 1976. In that case Judge Carrillo alleges that he is still the duly constituted District Judge and entitled to receive payment of the salary. That case has been removed to the 53rd District Court of Travis County, where it is now pending. In a 22 page supplemental petition Judge Carrillo contends that he is entitled to all emoluments of the office of District Judge of the 229th Judicial District because the impeachment proceedings were void and of no force or effect. Among other things, he contends that he was deprived of constitutional rights of due process during the House Committee hearings; that the House had no authority to call itself into session for the purpose of voting Articles of Impeachment against him; and that without valid Articles of Impeachment the Senate had no power to convict and remove him from office.

 Without regard to the merits of the above mentioned lawsuit, it stands as

---

2. Senate Journal, 4th Leg., Impeachment Session, Sept. 3, 1975, 1, 6.

3. Id., Jan. 7, 1976, 772–773.

4. The Attorney General served both as Examiner for the Judicial Qualifications Commission in the hearings before the Master and as Special Prosecutor for the House Board of Managers in the trial before the Senate.

5. Article I charged: "While holding office as district judge . . . O. P. Carrillo conspired with others to have Duval County pay for groceries, to which he was not entitled, for his

personal use and benefit." The vote on sustaining that Article was 16 "ayes" and 12 "nays," resulting in a judgment of acquittal thereon. Article VII which was sustained by a vote of 23 "ayes" to 5 "nays," charged: "While holding office as district judge . . . O. P. Carrillo conspired with others to charge and collect money from governmental entities for rentals of equipment that did not exist and for rental of equipment that the governmental entities did not use." Record of Proceedings, of the *High Court of Impeachment,* Twenty-third Day, Jan. 23, 1976, 3602, 3614–3615.

an attack upon the validity of the impeachment and removal adjudged by the Texas Senate. As long as it is pending, the proceeding before this Court is not moot. Furthermore, neither impeachment nor this proceeding are exclusive methods for the removal of district judges. The Constitution of Texas provides four methods. One is by impeachment as provided in Sections 1–5 of Article XV. A second is by the Supreme Court, upon presentment of verified charges by at least ten lawyers practicing in the affected court, as provided in Section 6 of Article XV. A third is by the Governor on address of two-thirds of each House of the Legislature as provided in Section 8 of Article XV. The other is a proceeding of this nature in which the Supreme Court acts after an investigation and recommendation of the Judicial Qualifications Commission as provided in Section 1–a of Article V. Neither is an exclusive remedy. As in Judge Carillo's case, more than one method may be pursued concurrently.

### Due Process

■ In all of the methods provided for removal of a judge, the judge is entitled to a full and fair trial on the charges preferred against him. *In re Brown*, 512 S.W.2d 317 (Tex.1974); *In re Laughlin*, 153 Tex. 183, 265 S.W.2d 805 (1954); *Ferguson v. Maddox*, 114 Tex. 85, 263 S.W. 888 (1924); *Gordon v. State*, 43 Tex. 330 (1875).

Judge Carrillo complains that he was denied due process in this proceeding because the Notice of Preliminary Investigation dated May 2, 1975, related only to alleged misconduct in receiving gifts and engaging in certain business transactions with a party to a lawsuit pending in his court; that he had no similar notice in accordance with Rule 3(b) when five additional charges were preferred against him in the Notice of Formal Proceedings served upon him on July 18, 1975, or when six additional charges were included in the Commission's First Amended Notice of Formal Proceedings dated October 8, 1975. He complains further that the total of eleven additional charges of misconduct were not properly a part of the proceeding commenced by the May 2nd notice; that the Commission failed to specify in ordinary and concise language the additional charges against him; and that it failed to follow other procedures specified by the Rules of this Court for Removal or Retirement of Judges.

■ We find no merit in these procedural complaints. Our Rule 3(b) provides for the Commission to give a notice of preliminary investigation before finally determining that formal proceedings shall be instituted. The purpose is to give the judge an opportunity to reply to the charges then before the Commission before it acts with respect to formal proceedings. Judge Carrillo filed his reply on May 13, 1975. This did not mean that the Commission was prevented from preferring additional charges in its subsequent Notice of Formal Hearings and its First Amended Notice of Formal Hearings, or that it should start all over by incorporating all charges in a new Notice of Preliminary Investigation. It is clear from our Rule 4 that it was the Notice of Formal Proceedings which officially and formally commenced this proceeding. Nothing in our Rules nor the concept of due process requires that the pleadings instituting formal proceedings, or amendments thereto, need be limited to matters contained in the verified statement initially incorporated by the Commission in its Notice of Preliminary Investigation, so long as due notice is given concerning the additional charges. Rule 11 specifically provides that a Master, or the Commission, at any time prior to reaching a decision, "may allow or require amendments to the notice of formal proceedings . . . ." Rule 11 continues: "The notice may be amended to conform to proof or to set forth additional facts, whether occurring before or after the commencement of the hearing." Judge Carrillo was given every notice required by the Rules. He had ample opportunity to reply and did reply to the sum total of the twelve charges that were made against him in the First Amended Notice of Formal Hearing filed with the Master on October 8, 1975.

We find no merit in Judge Carrillo's remaining complaints about the wording of the charges and procedures followed by the Commission and the Master. The alleged acts of misconduct were stated with sufficient clarity to enable him to know and defend against the charges preferred. He was afforded an adequate pretrial hearing on October 25, and a postponement of the hearing on the merits until November 3, 1975, in order that he might prepare his defense. We find no lack of notice or due process in the proceedings before the Commission or the Master.

### Findings of the Master and the Commission

As heretofore indicated, after 29 days of hearings which elicited 4467 pages of evidence and hundreds of documentary exhibits, the Master filed his findings with the Commission on January 13, 1976. Since the Commission substantially agreed with the Master's findings of misconduct, we shall summarize the findings from the Master's Report, with notations of any differences in our own findings:

I. That Judge Carrillo conspired with Ramiro Carrillo, his brother and county commissioner, to obtain goods and merchandise from the Cash Store in an amount of $300.00 per month from at least July 1972 through December 1974. By a preponderance of the evidence it was shown that this resulted from a scheme by which a monthly payment of $700 to $800 of Duval County welfare funds was made to the Cash Store for fictitious welfare recipients, with no more than $100.00 per month being given out in welfare groceries. A monthly sum of $300.00 from each monthly Duval County Welfare payment was applied to Judge Carrillo's account for a total during the period of approximately $9000.00.

II. That Judge Carrillo was deeply involved in transactions concerning property in litigation in his court and with one of the litigants, being charged, however, only with failure to voluntarily recuse or disqualify himself from the case. The Master found that Judge Carrillo signed only agreed orders prior to a hearing by another judge which resulted in a judgment of disqualification. The Judicial Qualifications Commission made no finding upon this charge. We find that the preponderance of the evidence shows that Judge Carrillo was so involved with the litigant and the property in litigation that he should have recused himself voluntarily. Except for the stronger action of removal on other charges, we would censure Judge Carrillo for failing to recuse himself in the case.

III. That Roberto Elizondo was unlawfully paid $225.00 per month from the Duval County Road and Bridge Fund while he attended Court Reporting School from January 1, 1972 through September of 1973, with the knowledge and assistance of Judge Carrillo. Neither the Master, nor the Commission, nor do we find from a preponderance of the evidence that these payments were the result of a conspiracy between Judge Carrillo and his brother, Ramiro Carrillo, to steal such sums from Duval County as charged in the First Amended Notice of Formal Proceedings.

IV, V AND V–A. That Judge Carrillo periodically used the services of employees and equipment of Duval County on his own ranch or in furtherance of his own personal business interests.

VI. That in November, 1973 Judge Carrillo used equipment of the Duval County Conservation and Reclamation District to construct the foundation of a building owned by him.

VII–X. Separate amounts in the sum of $1008.00, $1018.00, $1006.00 and $995.00, respectively, were appropriated by Judge Carrillo for his own use and benefit from Duval County with the intent permanently to deprive the county of such money. The findings on these charges were well documented and showed a scheme by which false bills or invoices were prepared showing that Farm and Ranch Supply sold goods and leased equipment to Benavides Implement and Hardware Company, which in

turn billed Duval County for the goods, merchandise, services or equipment which, in fact, had not been provided. Duval County would then send checks to Benavides Implement and Hardware which, in turn, paid them over to various people and entities, including Judge Carrillo.

XI. That Judge Carrillo wrongfully obtained the sum of $5625.00 from the Duval County Conservation and Reclamation District with the intent to permanently deprive the district of such money. The evidence here included a check from Benavides Implement and Hardware to Judge Carrillo, the source of which was traced to the district.

XII. That Judge Carrillo, from December 14, 1972 until May 1974, unlawfully used Duval County funds in excess of $8000.00 with the intent permanently to deprive Duval County of said money. This was accomplished by Judge Carrillo's purchase of two bulldozers for his own use through a lease-purchase agreement in the name of Benavides Implement and Hardware. The equipment was financed through payment of Duval County funds to Benavides Implement and Hardware on fictitious invoices, and in turn Benavides made payments for Judge Carrillo's account on the sum owed by him to Plains Machinery Company, at least to the extent of $8000.00.

■ This is not a criminal proceeding, since its function is not to punish but to maintain the high quality and integrity of the judiciary. Consequently the findings of the Master, the Commission, and of this Court need be established only by a preponderance of the evidence. *In re Brown*, 512 S.W.2d 317 (Tex.1974). Except as indicated above, we agree that a preponderance of the evidence established the acts of misconduct as found by the Master and the Judicial Qualifications Commission. We further find that the misconduct set forth in charges I and III through XII constitute willful conduct which cast public discredit upon the judiciary.

*Effect of Election Subsequent to Acts of Misconduct*

As heretofore indicated, substantially all of the misconduct set forth above occurred prior to November 5, 1974, when Judge Carrillo was re-elected to the office of district judge. He insists that Article 5986, V.A.C.S. is applicable. It reads:

"No officer in this State shall be removed from office for any act he may have committed prior to his election to office."

■ We have heretofore held that the above statute does not apply to the office of district judge. *In re Brown* and *In re Laughlin, supra.* Section 7 of Article XV of the Texas Constitution authorizes the Legislature to provide for the removal of officers for whom the methods of removal are not provided in the Constitution. This proceeding for removal is authorized by the Constitution, and for that reason Article 5986 is not applicable. The spirit of that Article, however, was applied by this Court in a proceeding to remove a district judge pursuant to Section 6 of Article XV in the case of *In re Laughlin*, 153 Tex. 183, 265 S.W.2d 805, 808 (1954). The rule was there stated:

"Neither may removal [of judges] be predicated upon acts antedating election, not in themselves disqualifying under the Constitution and laws of this State, when such acts were a matter of public record or otherwise known to the electors and were sanctioned and approved or forgiven by them at the election. This holding is in harmony with the public policy declared by the Legislature with respect to other public officials. Article 5986, R.C. S."

In *Brown, supra*, we recognized that the sound rationale for this doctrine is that the public, as the ultimate judge and jury in a democratic society, can choose to forgive the misconduct of an elected official if the public knows about such misconduct prior to the election. If, on the other hand, the misconduct is unknown to the public prior to the election and is of such willful nature as to cast public discredit upon the judici-

ary, it cannot be said that the judge was forgiven by his election or re-election. In the present case there is no evidence whatever that the misconduct of Judge Carrillo was known to the public prior to his election on November 5, 1974. Until these proceedings and the impeachment proceedings were commenced, the record shows that the acts of misconduct were concealed from the public. They were not matters of public record, and it cannot be said that they were acts which were forgiven by the electorate when they voted for Judge Carrillo on November 5, 1974.

We hold that the willful and persistent acts of misconduct committed by Judge Carrillo prior to his last election were such as to cast just as much public discredit upon the judiciary as if they had been committed after the election; and they were not in any manner absolved by his election.

### Misconduct May Consist of Non-Judicial Acts

As heretofore stated, none of the misconduct found by the Commission and this Court involved acts of Judge Carrillo in his judicial capacity. In fact, both the Master and the Commission found as follows:

"Judge O. P. Carrillo is industrious in carrying out the responsibilities of his office. He is courteous to litigants, lawyers, witnesses and court personnel. He maintains proper decorum in the courtroom and he maintains a judicious demeanor. He is apparently fair to litigants in his decisions."

While most removal cases do relate to judicial rather than personal misconduct, there have been at least two proceedings in other states which involved acts of personal non-judicial misconduct. In *Geiler v. Commission on Judicial Qualifications*, 10 Cal.3d 270, 110 Cal.Rptr. 201, 515 P.2d 1 (1973), much of the conduct of the judge under scrutiny related to vulgar and indecent language on his part, which took place at a time when he was not engaged in presiding over his court. The California Supreme Court described "prejudicial conduct" as including "willful misconduct out of office, i. e. unjudicial conduct committed in bad faith by a judge not then acting in a judicial capacity."

The Supreme Court of Louisiana concluded that charges relating to personal non-judicial conduct warranted removal of a judge under provisions of the Louisiana Constitution. *In re Haggerty*, 257 La. 1, 241 So.2d 469 (1970). Although all of the alleged misconduct occurred in a private capacity, the Louisiana Supreme Court said that the public has a "deep and vital interest" in the "office of Judge." * * * "The official conduct of judges, as well as their private conduct, is closely observed, when a judge, either in his official capacity or as a private citizen, is guilty of such conduct as to cause others to question his character and morals, the people not only lose respect for him as a man but lose respect for the court over which he presides as well." 241 So.2d 469–478. With this we agree. It is entirely possible for the personal conduct of a judge while he is off the bench to be so willful, intemperate, or dishonest as to cause public disrespect for the office and the judiciary in general. It is wise that Section 1–a of Article V holds a judge accountable for both his private and his judicial conduct whenever either are so willful or persistent as to cast public discredit upon the judiciary or the administration of justice.

We hold that non-judicial acts, including misconduct committed but unknown to the public before a judge is elected to office, may be willful or persistent so as to cast public discredit upon the judiciary or administration of justice and serve as grounds for removal under this type of proceeding. The conduct constituting grounds for removal under Section 1–a of Article V is not limited to judicial acts or acts performed during the term of office for which the judge is elected.

### Custom In Duval County Is Irrelevant

Judge Carrillo complains that the Commission's rejection of the Master's specific findings as to customary use of Duval

County employees and equipment by prominent ranchers was unsupported by the evidence. In this connection Judge Carrillo apparently deems the findings of the Master as exculpatory and therefore relevant to a judgment concerning his own misconduct. After his findings under charge IV that Judge Carrillo had wrongfully used a county employee and county equipment on his own ranch, the Master continued:

> "I further find that it was common and accepted practice for politically influential ranch owners in Duval County to use county employees and county equipment to work on their ranches."

Similar findings were made with respect to Judge Carrillo's misconduct under charges V, V–A, and VI as being in accordance with custom and common practice in Duval County. The record supports these findings, but they are relevant only to the extent of showing that disrespect for the law in Duval County has been condoned rather than condemned by Judge Carrillo. The laws of Texas forbidding persons from using county employees and equipment for their own private benefit are applicable to Duval County whether or not they are applied or enforced by local officials. The unlawful conduct of Judge Carrillo was not excused because other citizens of Duval County may have engaged in the same practice.

### Conclusion

We have carefully examined all other complaints lodged by Judge Carrillo against this proceeding and in favor of his Petition to Reject the Recommendation of the Judicial Qualifications Commission. We find no merit in his contentions and therefore deny his Petition to Reject. For the reasons stated above, we approve and concur in the Recommendation of the Judicial Qualifications Commission that O. P. Carrillo should be removed from office.

Accordingly, it is ordered that O. P. Carrillo be, and he is hereby removed from the office of District Judge of the 229th Judicial District, this order to be effective at 11:00 a. m., July 14, 1976. In accordance with Rule 24 applicable to these proceedings, no motion for rehearing will be entertained.

The judgment herein is without prejudice to any valid earlier date of removal which may have been accomplished by the judgment of impeachment voted against O. P. Carrillo by the Senate of Texas on January 23, 1976.

GREENHILL, C. J., concurs in the result.