STATE of Texas, Appellant,

v.

Oscar B. McINNIS, Appellee.

No. 1535.

Court of Civil Appeals of Texas, Corpus Christi.

May 31, 1979.

Rehearing Denied July 16, 1979.

891

Andrew J. Shuval, Texas Prosecutors Coordinating Council, Austin, for appellant.

John E. Lewis, Jones & Lewis, McAllen, Jack C. Skaggs, Harlingen, for appellee.

## OPINION

BISSETT, Justice.

This is a suit brought by the State of Texas, acting through the Texas Prosecutors Coordinating Council, to remove the Criminal District Attorney of Hidalgo County from office for alleged misconduct. Following a hearing on a motion to dismiss in the District Court of Hidalgo County, the cause was dismissed with prejudice. The State has appealed.

Oscar B. McInnis, the Criminal District Attorney of Hidalgo County, was elected to that office for a term of four years beginning January 1, 1975, and ending December 31, 1978. On August 1, 1978, he was indicted by a federal grand jury for the Southern District of Texas for perjury and conspiracy to commit murder. Shortly after McInnis's Federal indictment, the Texas Prosecutors Coordinating Council, by decision dated August 21, 1978, found good cause to file a removal action against him for misconduct in office. Pursuant to the Council's decision, a petition for removal was filed against McInnis on September 1, 1978, under authority of Tex.Rev.Civ.Stat.Ann. art. 332d, § 10 (Supp.1978–79). In its petition, the State alleged that McInnis was guilty of perjury, aggravated perjury, solicitation of murder and capital murder, conspiracy to commit murder and capital murder, violations of Tex. Penal Code Ann. § 39.01 (1974), and willful conduct which was clearly inconsistent with the proper performance of his official duties.

Following the filing of the State's petition for removal, the Federal indictment against McInnis, insofar as it charged him with conspiracy to commit murder, was dismissed on jurisdictional grounds by the Honorable Robert O'Connor, United States District Judge, on September 15, 1978. The

indictment relating to perjury was also dismissed. Not long thereafter, McInnis was indicted by a state grand jury for solicitation of murder and conspiracy to commit murder. While the State indictment was pending, and after the primary election was over, McInnis, who was unopposed at both the primary and general elections, was reelected to the office of Criminal District Attorney for Hidalgo County at the general election on November 7, 1978.

Thereafter, on December 18, 1978, the State filed its first amended petition for removal. In its amended petition the State alleged, in addition to the allegations contained in its original petition, new facts relating to its broad allegations of willful conduct in the original petition, as well as a new allegation that McInnis had violated Tex. Penal Code Ann. § 39.02 (1974). Subsequent to this amendment, the District Court of Hidalgo County, in the criminal case pending against McInnis, ruled on January 5, 1979, that McInnis had been entrapped as a matter of law. Accordingly, an order dismissing the cause in state court was signed on January 22, 1979.

On January 9, 1979, McInnis filed a motion to dismiss the State's petition for his removal from the office of Criminal District Attorney for Hidalgo County. The State, on February 28, 1979, filed its second amended petition. This petition, its live pleading, alleged the same acts of misconduct as were alleged in its first amended petition. After an April 23, 1979, hearing in the District Court of Hidalgo County, the Special District Judge entered an order dismissing the cause with prejudice. In its order of dismissal the court "found" that:

"1. . . . on September 1, 1978, the date upon which the State of Texas commenced its action by filing the Original petition for Removal, Oscar B. McInnis had been elected to and was serving as Criminal District Attorney of Hidalgo County, for a term of office which commenced January 1, 1975, and would extend through December 31, 1978.

2. . . . in the General Elections held in Hidalgo County, Texas, in November, 1978, Oscar B. McInnis was elected as Criminal District Attorney of Hidalgo County, Texas, for a term of office which would commence January 1, 1979, and would extend through December 31, 1982, and . . . in November, 1978, Oscar B. McInnis did not have an opponent.

3. . . . in January, 1979, Oscar B. McInnis took the oath for the office of Criminal District Attorney of Hidalgo County, Texas, and signed his bond.

4. . . . all claimed acts, behavior and conduct set out or alleged in (the several petitions for removal) occurred, according to the said pleadings of the State, prior to the election of Oscar B. McInnis to office for the term commencing January 1, 1979."

The court concluded that all of the acts which the State alleged to have been committed by McInnis "prior to August 29, 1977 (the effective date of art. 332d), should be disregarded and are not available to the State of Texas as grounds for removal from office." The court's dismissal was based primarily upon the application of Tex.Rev. Civ.Stat.Ann. art. 5986 (1962) to a proceeding brought pursuant to Tex.Rev.Civ.Stat. Ann. art. 332d (Supp.1978–1979).

Article 5986 provides that no "officer in this State shall be removed from office for any act he may have committed prior to his election to office." This statute codifies that which is termed the "prior term" doctrine. See *Matter of Bates,* 555 S.W.2d 420 (Tex.Sup.1977).

The "prior term" doctrine, at first glance, appears to justify the trial court's action in this case dismissing the State's petition for removal because all of the complained-of acts by McInnis occurred during his 1975–78 term, and before his reelection in November, 1978. The State attempts to avoid this result, and seeks a reversal of the trial court's action, by several points of error.

■ By its first point of error, the State argues that the "prior term" doctrine does not apply in this case because Tex.Rev.Civ. Stat.Ann. art. 332d (Supp.1978–79) repealed or preempted Tex.Rev.Civ.Stat.Ann. arts. 5970 *et seq.* (1962) insofar as the latter statutes affected prosecutors. Article 332d was an act by the legislature which created the Texas Prosecutors Coordinating Council and, among other things, granted the Council power to file a petition for removal of a prosecuting attorney from office in certain enumerated situations.

The enactment of article 332d did not repeal article 5986 insofar as the latter affects prosecuting attorneys. Article 5986 essentially has been the law in Texas since 1875. *Gordon v. State*, 43 Tex. 330 (1875). Article 332d has several enumerated purposes, none of which requires the courts to single out prosecuting attorneys for removal from office because of acts committed during a prior term. Nowhere in the statute is there any mention of, or reference to, the "prior term" doctrine. In this context, the State's reliance upon *Cuellar v. State*, 521 S.W.2d 277 (Tex.Cr.App.1975) and *State v. Dancer*, 391 S.W.2d 504 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.) is misplaced.

*Cuellar* involved the question of whether a special statute dealing with the subject of legislative continuances incorporated a procedural requirement found in the general continuance statute. In holding that it did not, the court cited the general rule that where special statutes are complete within themselves, they control, even though other statutes concerning the same subject matter contain requirements not enumerated in the special statute. The distinction, however, between *Cuellar* and the case at bar is twofold. First, *Cuellar* dealt with the procedural requirement that a defendant sign his own motion for continuance, while article 5986 deals with a substantive right, namely the bar to removal of public officers for acts committed during a prior term. Second, the rule announced in *Cuellar* assumes that which is the very matter in issue in the case at bar, namely whether the statute sought to be applied [article 332d] is complete within itself or should be construed in light of prior enacted law dealing with the same subject matter.

This Court's decision in *Dancer* involved the question of whether an individual attorney, acting independently of the State Bar, had standing to seek the disbarment of a fellow attorney. The resolution of this issue depended upon whether Tex.Rev.Civ. Stat.Ann. art. 314 (1973), which created such standing, had been repealed or preempted by passage of Tex.Rev.Civ.Stat. Ann. art. 320a–1 (1973), the State Bar Act. In holding that article 314 was indeed repealed by the State Bar Act, this Court relied upon the rule that a statute intended to prescribe the only rules governing a particular area of law repeals prior statutes which prescribed other rules in the same area of law, even though there is no repugnancy. Cited in the opinion is language of the Supreme Court to the effect that newly enacted legislation of a comprehensive nature, intended to create a new entire and independent system respecting a particular subject, is universally held to repeal and supersede all previous systems respecting the same subject. In this vein, parts of prior laws that are omitted from the new legislation are to be considered as annulled.

The distinctions between *Dancer* and the case at bar are manifold. First, in *Dancer* it was noted that the State Bar Act contained an express repeal clause regarding any prior conflicting legislation. Second, the State Bar Act contained an emergency clause which demonstrated the legislative intent to provide for a new, independent and comprehensive set of laws. Finally though, and most importantly, the decision in *Dancer* presupposed that different laws should be harmonized if possible and the holding there was based on the unavoidable conclusion that many inconsistencies and contradictions would have existed in the State Bar Act had the old law been incorporated into the new. In the case at bar, however, there is no inconsistency or contradiction caused by reading the "prior term" doctrine into article 332d. In point of fact, the two laws are easily harmoniza-

ble. Moreover, as was the case in *Cuellar*, all of the rules of statutory construction cited in *Dancer* assumed that which is heatedly in issue here, namely whether article 332d was intended to create a new independent and comprehensive system of law. Hence, ever mindful of the disfavor courts should have for repeal by implication, *Standard v. Sadler*, 383 S.W.2d 391 (Tex.Sup. 1964), we overrule the State's first point.

By its second point, the State contends that article 332d is a more specific statute than article 5986 and, as such, should control over the latter. This point is totally meritless because article 5986 is actually more specific than article 332d when it comes to removal for acts committed during a prior term, which is the gravamen of this appeal. In point of fact, article 332d is completely silent on the "prior term" rule, hence there is no conceivable reason for it to control over article 5986. The State's second point is overruled.

As already noted, the dismissal of the removal proceedings against McInnis was based, primarily, upon the application of article 5986 to this case. The State, in its third and fourth points of error, claims that the trial court erred in rendering its judgment of dismissal because article 5986 has been limited by the Supreme Court, and does not apply absolutely because of the "forgiveness" doctrine announced in *In re Laughlin*, 265 S.W.2d 805, 808 (Tex.Sup. 1954). We agree.

In *Laughlin*, which involved an original proceeding in the Supreme Court to remove a district judge pursuant to *Tex. Const.* art. XV, § 6, the court used the following language:

". . . Neither may removal be predicated upon acts antedating election, *not in themselves disqualifying under the Constitution and laws of this State, when such acts were a matter of public record or otherwise known to the electors and were sanctioned and approved or forgiven by them at the election.* This holding is in harmony with the public policy declared by the Legislature with respect to other public officials. Article 5986, R.C.

S.1925, Vernon's Ann.Civ.St. . . ." (emphasis supplied)

This language has come to mean that removal *may* be predicated upon misconduct during a prior term if such misconduct was either unknown to the public, or is in and of itself disqualifying under Texas law. See: *Matter of Bates*, 555 S.W.2d 420 (Tex.Sup. 1977); *Matter of Carrillo*, 542 S.W.2d 105 (Tex.Sup.1976); *In re Brown*, 512 S.W.2d 317 (Tex.Sup.1974).

There is language in *Brown, Bates* and *Carrillo* which completely disposes of any doubt over the applicability of the "forgiveness" doctrine to article 5986. According to *Brown* and *Carrillo*, it was essentially an attempt by the Supreme Court in *Laughlin* to articulate the "spirit" of article 5986, which prompted the court to use that language which has come to stand for the "forgiveness" doctrine. According to *Bates*, the phrases "prior term" and "forgiveness" mean essentially the same thing. Thus, it is an unavoidable conclusion that the "forgiveness" doctrine merely states the rationale behind article 5986 and the "prior term" rule.

Even though *Laughlin, Brown, Bates* and *Carrillo* were cases involving removal of district judges, we see no reason why the "forgiveness" doctrine announced in *Laughlin* should not be applied in a removal proceeding involving a district attorney. Having concluded that the "forgiveness" doctrine applies in the case at bar, we must next determine whether the alleged acts set out in the State indictment were "forgivable" by the electorate in Hidalgo County, and, if so, whether they were "forgiven." We hold that they were not forgivable for three reasons. First, the alleged criminal acts by McInnis during his prior term, if committed, were *disqualifying under the laws of this State. Laughlin, supra* at, 808; *Bates, supra*, at 428. Second, the alleged acts made the basis of complaint, if committed, would be acts of a willful nature so as to cast public discredit upon the office of district attorney. *Carrillo, supra*, at 110–11. Third, to hold that a person

might commit conspiracy to murder, perjury, or similar serious crimes during one term of office and thereafter be absolutely immunized by the "forgiveness" doctrine from removal during a subsequent term of office is contrary to common sense and the public policy of this State. We believe that the legislature, in the enactment of article 5986, did not intend that the same should apply where the reelected official committed a serious crime during the prior term.

Even if the acts constituting the commission of the crimes with which McInnis is charged can be said to be forgivable by the electorate, it must first be established that the electorate knew on November 7, 1978, when he was reelected that such acts had been in fact committed by him. According to the record that is before us, there is *no evidence* that such acts had in fact been committed by McInnis. All that the voting public knew at the time he was reelected were contents of the following public documents: 1) the Federal indictment and its dismissal; 2) the State's original petition; and 3) the existing State indictment. Those documents contained nothing more than allegations and charges that a crime had been committed. Hence, a question arises as to whether the voters were sufficiently aware of the commission of a crime by McInnis for the *Laughlin* "forgiveness" doctrine to be invoked. Consequently, in the absence of any proof available to the voting public at the general election that McInnis had actually committed the acts constituting crimes, as alleged and charged, there was no crime or proven misconduct to forgive.

■ It was not until January 5, 1979, that there was any evidence available to the public that McInnis did commit the acts which formed the basis for the criminal charges brought against him by the State, for, on that date, the District Judge, in the criminal proceeding against McInnis, found "as a matter of law that entrapment was established by the Defendant," and ruled that "all tape recordings and transcriptions thereof of conversations between Daniel Rodriguez and the Defendant" be suppressed. We make the following observations: in a criminal proceeding in Texas, 1) the defense of entrapment necessarily assumes that the act charged was committed by the defendant, *Canales v. State*, 496 S.W.2d 614 (Tex.Cr.App.1973), and 2) the defense of entrapment is not available to a defendant who denies that he committed the offense charged. *Reed v. State*, 421 S.W.2d 116 (Tex.Cr.App.1967).

As a result of the aforesaid finding and ruling, the State of Texas filed a motion to dismiss the criminal cause against McInnis because, without the presentation of the suppressed evidence at the criminal trial, the jury would be required to return a verdict of not guilty. The cause was thereafter dismissed on January 22, 1979. Such dismissal did not constitute an acquittal. The dismissal does not operate as any specific finding of fact relating to the criminal acts which the indictment alleged were committed by McInnis on or about April 19, 1978, unless the criminal record would show that McInnis admitted that he committed the offenses as charged in order to invoke the defense of entrapment. Therefore, in the record before us, there has been no finding by a trier of fact, either in a criminal court or in a civil court, that McInnis did or did not commit the acts set out in the indictment.

■ Article 5970 *et seq.*, as well as article 332d, denominate a removal suit as a civil proceeding, which is to be conducted in accordance with the Texas Rules of Civil Procedure. *Meyer v. Tunks*, 360 S.W.2d 518 (Tex.Sup.1962); *Brown, supra*. The degree of proof necessary to support a judgment of removal of a public official is by a preponderance of the evidence, rather than beyond a reasonable doubt, as is the case in a criminal prosecution. *Carrillo, supra; Meyer, supra*. A removal suit may have a punitive effect, and while such suit, in most cases, will charge the official with a violation of a criminal statute, evidence relating to the commission of a crime might not be rendered inadmissible in a removal suit because of entrapment, even though such evidence may be rendered inadmissible in a

criminal case. The third and fourth points are sustained.

■ The State, in its fifth point of error, contends that the trial court erred in holding that all claims of official misconduct occurring prior to August 29, 1977 (the effective date of article 332) should be disregarded. We agree that the trial court erred.

The trial court ruled that acts of alleged misconduct occurring prior to August 29, 1977, could not be considered in defendant's removal suit because of apparent constitutional objections to retroactive legislation. While we agree that McInnis had a vested right to his office, we certainly think that such "right" can be divested in the event a trier of facts finds acts of misconduct on his part. We hold that McInnis can be removed from office because of acts of misconduct which occurred prior to the effective date of article 332d. The constitutional inhibition against the making of retroactive laws is not, as such, extended to a procedural or remedial statute. *Commercial Insurance Co. of Newark, New Jersey v. Lawe*, 480 S.W.2d 781 (Tex.Civ.App.—Dallas 1972, n. r. e.). Article 332d is just such a statute. Thus, upon remand of this case, the trial court is instructed to allow the fact finder to consider otherwise admissible evidence of misconduct occurring prior to August 29, 1977. The fifth point is sustained.

## CROSS POINT

McInnis, by a cross point, contends that the trial court erred in failing to find that he has been denied procedural due process by being deprived of his office during the pendency of these proceedings. He bases this charge upon three different, yet related, theories.

■ First, he argues that he was given insufficient notice of the good cause hearing before the Council in August, 1978. We think, however, that the Council's notice to McInnis that it would consider charges in the Federal indictment was sufficient.

■ Second, he argues that he has been deprived of his office on the basis of an amended petition (the first amended petition as carried over into the second amended petition) containing numerous matters of which he had no notice or hearing. Specifically, he refers us to paragraph III of the first amended petition.

We are not impressed with his second theory and argument for two reasons. First, there is no requirement in article 332d that the Council notify prosecutors it is seeking to remove every time its pleadings are amended to include new factual allegations. Section 10(k) of article 332d provides that trials upon petitions for removal "shall proceed in accordance with the Texas Rules of Civil Procedure . . . ." Rule 63 of the Texas Rules provides that parties "may amend their pleadings . . . as not to operate as a surprise to the opposing party . . . ." There is no showing that McInnis was surprised by such amendment.

Second, his argument stems from his failure to establish any causal connection between the amended pleadings and his disqualification from office. Section 10(c) of article 332d provides that a prosecuting attorney is "disqualified from performing the duties and functions or exercising the privileges of his office when a petition for removal from office has been filed against him . . . ." Thus, defendant's disqualification from office in the case at bar resulted from the filing of the original petition for removal on September 1, 1978. The amendment to the petition on December 18, 1978, accomplished nothing new regarding defendant's disqualification from office. Furthermore, paragraph III of the first amended petition was primarily in response to special exceptions leveled at the State's original petition for removal by the defendant. Hence, defendant actually invited the allegations of facts contained in the amended petition.

■ Third, he attacks the very statutory scheme by which he is presently disqualified from office. According to him, it is unparalleled in this State that an elected public official can be removed *de facto* from office

through disqualification merely by the filing of a civil petition. It has been held in this State, however, that a temporary suspension which is incidental to the trial of a legal and valid removal proceeding is constitutionally valid. *Griner v. Thomas*, 101 Tex. 36, 104 S.W. 1058 (1907). The cross point is overruled.

The judgment of dismissal is REVERSED and the cause is REMANDED to the trial court for reinstatement and a trial on the merits.

## OPINION ON MOTION FOR REHEARING

McInnis, in his motion for rehearing, contends that our judgment rendered and filed on May 31, 1979, is in direct conflict with the holding in *Reeves v. State ex rel. Mason*, 267 S.W.2d 666 (Tex.Sup.1924), and with the holding in *State ex rel. Russell v. Kerry Knorpp*, 575 S.W.2d 401 (Tex.Civ. App.—Amarillo 1979), in which the Supreme Court refused writ of error, n. r. e., on June 6, 1979. We do not agree. Both cases are distinguishable from the case at bar.

The "Laughlin Doctrine," which, in effect, modified the holding in *Reeves*, was announced by the Supreme Court 30 years *after Reeves* was decided. There is no legal or logical reason to restrict the application of that doctrine solely to the removal of district judges. In *Knorpp*, the issue of public knowledge and forgiveness was submitted to the jury and was decided adversely to the State. In the instant case, the appeal was from a judgment dismissing the cause with prejudice, and not from a judgment rendered pursuant to a jury verdict.

For the reasons stated in our original opinion, we remain convinced that the alleged acts of solicitation of murder and conspiracy to commit murder, if proved, would disqualify McInnis from holding the office of district attorney, even though such acts were committed during the prior term. The State is entitled to a trial on the merits of its lawsuit.

The motion for rehearing is OVERRULED.