**In re Eduardo "WALO" Gracia BAZAN.**

No. 06–0952.

Supreme Court of Texas.

Argued Sept. 26, 2007.

Decided March 28, 2008.

Rehearing Denied May 16, 2008.

---

Kelly K. McKinnis, Adolfo "Al" Alvarez, Law Office of Adolfo Alvarez, McAllen, TX, for Relator.

Andrew L. Almaguer, Hidalgo County District Attorney's Office, Rene Guerra, Criminal District Atty., Cheryl Hole, Office of Criminal District Atty., Edinburg, TX, for Real Party In Interest.

Justice MEDINA delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, Justice GREEN, and Justice JOHNSON joined.

In this original mandamus proceeding, we must decide whether Chapter 87 of the Local Government Code forbids a district court from removing a county officer, who has been convicted of a felony, when the conviction is based on acts that occurred before the officer's election. The question arises because one section in Chapter 87 provides for the officer's immediate removal upon conviction, while another seemingly prohibits removal for acts that predate an election.

We construed this statute in *Talamantez v. Strauss*, 774 S.W.2d 661 (Tex.1989) (per curiam), concluding that a county officer could not be removed from office for acts predating the officer's election. Although not mentioned in our per curiam opinion, the conviction in *Talamantez* involved a third degree felony similar to the conviction in this case and thus supports the relator's present claim. Because we conclude that *Talamantez* was wrongly decided, however, we overrule that decision and deny the present petition for writ of mandamus.

I

In this case, Hidalgo County Constable Eduardo "Walo" Gracia Bazan was con-

victed of a third degree felony for theft of property by a public servant, sentenced to seven years probation, and fined $3,000.00. *See* TEX. PENAL CODE § 31.03(f). In such situations, the Local Government Code provides for the immediate removal of the county officer upon conviction. TEX. LOCAL GOV'T CODE § 87.031.[1] If the officer appeals the conviction, which Bazan has done, the removal order is superseded, unless the trial court determines that the public interest requires the officer's suspension during the appeal. *Id.* § 87.032.[2] In this instance, the trial court ordered Bazan's suspension during his appeal.

Bazan sought mandamus relief in the court of appeals, complaining that the trial court's order was contrary to *Talamantez*. As in *Talamantez*, Bazan's felony conviction is based on acts that predate his election. Bazan contends that he cannot be removed for these acts because Local Government Code section 87.001 prohibits the removal of a county officer "for an act the officer committed before election to office." *Id.* § 87.001. The court of appeals nevertheless denied relief, and Bazan filed the present petition, repeating his arguments under *Talamantez*.

## II

We had an opportunity to reconsider *Talamantez* shortly after our decision when another court of appeals refused to reinstate a county officer under similar circumstances. *Minton v. Perez*, 783 S.W.2d 803 (Tex.App.-San Antonio 1990, orig. proceeding). The *Minton* court was unsure from *Talamantez's* cursory analysis how section 87.001 was to be reconciled with the constitutional provision disqualifying persons convicted of high crimes from holding public office. *See id.* at 805 ("to the extent that section 87.001 conflicts with article XVI, section 2, the constitution must prevail"). The court speculated that perhaps some undisclosed fact distinguished *Talamantez* from its case. *Id.* We heard oral argument in a subsequent mandamus proceeding involving the same parties, but dismissed the petition as moot after Minton's successful criminal appeal resulted in his reinstatement. *Minton v. Perez*, 841 S.W.2d 854, 855 (Tex.1992). As in *Minton*, the Hidalgo County Criminal District Attorney, who is the real-party-in-interest to this proceeding, asks that we reexamine *Talamantez* in light of article XVI, section 2.

This constitutional provision states that: "Laws shall be made to exclude from office ... [persons] who have been or shall hereafter be convicted of bribery, perjury, forgery, or other high crimes." TEX. CONST. art. XVI, § 2. An individual convicted of a felony is thus ineligible to hold public office whether the conviction comes before or after the individual's election to office. *See id.*; TEX. ELEC.CODE § 141.001(4) (individual convicted of a felony ineligible to hold public office); TEX. LOCAL GOV'T CODE § 87.031 (felony conviction operates as an immediate removal from office); Op. Tex. Att'y Gen. No. H–20 (1973) ("The term 'other high crimes' includes any offense of

---

1. Section 87.031, "IMMEDIATE REMOVAL," provides: "(a) The conviction of a county officer by a petit jury for any felony or for a misdemeanor involving official misconduct operates as an immediate removal from office of that officer. (b) The court rendering judgment in such a case shall include an order removing the officer in the judgment."

2. Section 87.032, "APPEAL; SUSPENSION," provides: "If the officer appeals the judgment, the appeal supersedes the order of removal unless the court that renders the judgment finds that it is in the public interest to suspend the officer pending the appeal. If the court finds that the public interest requires suspension, the court shall suspend the officer as provided by this subchapter."

the same degree or grade as those specifically enumerated, namely felonies."). Section 87.001 of the Local Government Code, on the other hand, broadly states that an officer may not be removed from office for acts committed before the officer's election.

This section expresses what is sometimes called "the forgiveness doctrine," the idea being that pre-election conduct does not disqualify one from holding office the same way post-election conduct does. The doctrine's rationale is that the public has the authority "to forgive the misconduct of an elected official" following a campaign in which all the facts would presumably become known. *In re Brown*, 512 S.W.2d 317, 321 (Tex.1974). The public's power to forgive, however, is not without limits. It does not extend, for example, to felony convictions because a convicted felon is not qualified to hold public office, with or without the public's consent. TEX. ELEC. CODE § 141.001; *Hayes v. Harris County Democratic Executive Committee*, 563 S.W.2d 884, 885 (Tex.Civ.App.-Houston [1st Dist.] 1978, no writ). Thus, when the acts in question are themselves disqualifying under the constitution, they cannot be forgiven by the electorate. *In re Bates*, 555 S.W.2d 420, 428 (Tex.1977); *In re Laughlin*, 153 Tex. 183, 265 S.W.2d 805, 808 (1954); *see also McInnis v. State*, 603 S.W.2d 179, 180 n. 2 (Tex.1980).

*Talamantez* is not grounded on the forgiveness doctrine, but rather on the notion that section 87.001 is a general limitation on a court's authority to remove an officer under Chapter 87 of the Local Government Code. In expressing that limitation, however, *Talamantez* failed to consider the nature of the officer's prior acts or the nature of the proceeding resulting in the officer's removal. These considerations are important because a county officer may be removed for different types of misconduct that normally dictate the method of removal. Chapter 87 recognizes this by distinguishing between civil and criminal removal proceedings. The key to understanding the limitation expressed in section 87.001 lies in this distinction.

Chapter 87 explains civil prosecutions in subchapter B.[3] TEX. LOCAL GOV'T CODE §§ 87.011–87.019. Under this subchapter, a county officer may be removed for a number of reasons that are not necessarily criminal, such as incompetency, official misconduct, intoxication, or the failure to execute a bond. *Id.* §§ 87.013–.014. Subchapter B details who may initiate the proceeding, the requisites of the petition and citation, the conduct of the trial, appeal, and other matters. *Id.* §§ 87.011–87.019. Unlike a criminal trial, the burden is proof by a preponderance of the evidence. *See Huntress v. State*, 88 S.W.2d 636, 643–44 (Tex.Civ.App.-San Antonio 1935, no writ) (civil removal proceeding not dependent on proof of criminal charges); *cf. In re Brown*, 512 S.W.2d at 319–20 (concerning removal of a district judge).

Subchapter C, on the other hand, connects its removal proceeding directly to the criminal prosecution. TEX. LOCAL GOV'T CODE §§ 87.031–.032. It does not incorporate subchapter B's procedural detail but rather simply directs the criminal court to include an order removing the county officer from office in the event of conviction. *Id.* § 87.031. Removal in this instance depends on proof beyond a reasonable doubt. *See* TEX. PENAL CODE § 2.01 ("no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt").

---

**3.** Chapter 87 is divided into four subchapters: (A) General Provisions, (B) Removal by Petition and Trial, (C) Removal by Criminal Conviction, and (D) Filling of Vacancies.

Section 87.001 is the only provision in subchapter A, the subchapter reserved for provisions of general applicability. Again, it provides that "[a]n officer may not be removed under this chapter for an act the officer committed before election to office." *Id.* § 87.001. *Talamantez* applied section 87.001 to a criminal removal proceeding, probably because of the provision's purported general application, but that was a mistake. The history of this section reveals that the Legislature intended it only as a limitation on a civil removal proceeding under subchapter B; it is not a limitation on the removal of a county officer incident to a criminal prosecution. To confirm this intent, we trace the statute back to its origin.

## III

The removal provisions at issue were first enacted in 1879, only three years after the adoption of the current constitution. In that year, the Sixteenth Legislature adopted title 66, chapter 2 of the Revised Code providing for the "Removal of County and Certain District Officers." [4] The removal provisions in the Local Government Code are substantively the same as this original legislation, but their organization has been changed. While the current statute begins with section 87.001's limitation for pre-election acts, the 1879 statute began with the two provisions relevant to criminal prosecution. TEX.REV.CIV. STAT. arts. 3388–3389 (1879). These provisions continue today as subchapter C, sections 87.031 and 87.032 of the Local Gov-

ernment Code, but have been moved from the statute's beginning.

After the two criminal provisions, the 1879 statute shifted to the civil proceeding, listing the grounds for such removal as incompetency, official misconduct, and drunkenness. *Id.* art. 3390. Two pages of definitions and procedures followed, most of which are carried forward in Chapter 87, subchapter B.[5] *Id.* arts. 3391–3417. As in subchapter B, the 1879 statute provided that a civil removal action could be commenced on the sworn petition of any citizen who had lived in the county for six months and was not himself under indictment. *Id.* arts. 3401–3402. The 1879 statute then explained the procedure for conducting the civil removal proceeding, adding near its end that no officer should be removed for prior acts: "No officer shall be prosecuted or removed from office for any act he may have committed prior to his election to office." *Id.* art. 3415.

The 1879 statute eventually became part of Title 100 of the Revised Civil Statutes of 1925. Title 100 faithfully tracked the 1879 statute, beginning with the two criminal provisions, then detailing the civil proceeding. *See* TEX.REV.CIV. STAT. arts. 5968–5987 (1925).[6] Again, as part of the discussion on civil removal, the 1925 statute added that no officer should be removed "for any act committed prior to his election to office." *See* TEX.REV.CIV. STAT. art. 5986 (1925). The statute's reorganization did not occur until 1987, when these removal

---

4. The Texas State Law Library has archived the 1879 Revised Statutes of Texas on its web site at http://www.sll.state.tx.us/codes/1879/1879.html.

5. The 1879 statute included an archaic distinction between "habitual drunkenness" and "drunkenness," providing that a habitual drunk might be removed from office regardless of whether the condition affected the offi-

cer's performance whereas incapacity and three convictions were necessary to remove a more infrequent drunk from office. TEX.REV. CIV. STAT. arts. 3395–3399 (1879). That distinction has not survived.

6. The Texas State Law Library has archived the 1925 Revised Statutes of Texas on its web site at http://www.sll.state.tx.us/codes/1925/1925.html.

provisions were recodified in Chapter 87 of the Local Government Code as part of the Legislature's statutory revision program. Act of 1987, 70th Leg., R.S., ch. 149, § 1.001, 1987 Tex. Gen. Laws 714.

It was then that the provision prohibiting removal for pre-election acts was moved to the front of the statute and its language modified to read: "An officer may not be removed under this chapter for an act the officer committed before election to office." TEX. LOCAL GOV'T CODE § 87.001.[7] The provision was also labeled as one of general application at that time.

■ The 1987 recodification was part of the Legislature's continuing effort to make the laws of this state more accessible and understandable by reorganizing provisions and updating language. Act of 1987, 70th Leg., R.S., ch. 149, § 1.001, 1987 Tex. Gen. Laws 714. The Legislature, however, expressly disclaimed the intent that its revisions should affect any substantive changes. Id. Talamantez followed shortly after these revisions, applying section 87.001's limitation broadly to prevent the removal of any county officer for pre-election acts, even those resulting in a felony conviction. Because our application was a substantive departure from prior law, it was contrary to the Legislature's declared intent. Id.; Johnson v. City of Fort Worth, 774 S.W.2d 653, 654–55 (Tex.1989). Properly construed, section 87.001's limitation for pre-election acts must apply only to the civil removal proceedings detailed in the chapter, not to removals that are incident to independent criminal prosecutions.

This construction is consistent with prior law and the underlying constitutional provisions.

Annotations to the 1879 civil removal provisions, now found in Chapter 87's subchapter B, reference two constitutional provisions: article V, section 24 and article XV, section 7. See TEX.REV.CIV. STAT. arts. 3390–3391 (1879).[8] The first provides that county officers "may be removed by the Judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing and the finding of its truth by a jury." TEX. CONST. art. V, § 24. The other directs the Legislature to "provide by law for the trial and removal from office of all officers of this State, the modes for which have not been provided in this Constitution." Id. art. XV, § 7. Subchapter B is the Legislature's response to these constitutional directives.

The criminal provisions in the 1879 statute, now Chapter 87's subchapter C, are not annotated similarly because they have a different constitutional source. That source is article XVI, section 2, which directs that laws be made to exclude from office those convicted of high crimes. Id. art. XVI, § 2. Because the constitution makes no allowance for high crimes that predate an officer's election, section 87.001's limitation for prior acts can only refer to official misfeasance that is, itself, not disqualifying and thus is prosecuted in a civil removal proceeding.[9] Accordingly,

---

**7.** In 1879, this provision read: "No officer shall be prosecuted or removed from office for any act he may have committed prior to his election to office." TEX.REV.CIV. STAT. art. 3415 (1879) [art. 5986 (1925)]. This provision was amended in 1939 to remove the prohibition against prosecution. Act approved June 1, 1939, 46th Leg., R.S., ch.1, § 1, vol. I, 1939 Tex. Gen. Laws 499. In 1987, the

phrase "under this chapter" was added along with other minor linguistic changes. Acts of Sept. 1, 1987, 70th Leg., R.S., ch. 149, § 1, 1987 Tex. Gen. Laws 805.

**8.** See note 4, supra.

**9.** See Reeves v. State ex rel. Mason, 114 Tex. 296, 267 S.W. 666, 669 (1924) (affirming

the trial court did not abuse its discretion in suspending Bazan from office pending the appeal of his felony conviction.

\* \* \*

The petition for writ of mandamus is denied.

Justice WILLETT filed a concurring opinion.

Justice WILLETT, concurring.

Although the facts of this case are simple, resolving them has proven deceptively complex—a Bazanian knot, as it were—requiring the Court to untangle seemingly contradictory language in the Texas Constitution and Local Government Code, all while wrestling with our own off-the-mark caselaw. These provisions and our precedent yield a puzzle whose pieces, each clear in isolation, fit together inexactly. I agree fully with the Court's result: Texas constitutional and statutory law mandate Bazan's removal from office. In reaching that result, however, I would harmonize

the discordant authorities in a manner that hews more closely to their explicit text, structure, and everyday meaning.

Several provisions in Texas law speak to whether convicted felons can seek or hold elected office. The instant removal action is premised on Article XVI, Section 2 of the Texas Constitution, which in its entirety reads: "Laws shall be made to exclude from office persons who have been convicted of bribery, perjury, forgery, or other high crimes."[1] The framers' "exclude from office" directive has given rise to various statutes, including those in Chapter 87 of the Local Government Code related to the removal of county officers. Section 87.031 is styled "Immediate Removal" and declares categorically that "conviction ... for any felony or for a misdemeanor involving official misconduct operates as an immediate removal from office." Clear enough. And if Section 87.031 were the complete statutory backdrop, today's case would be easy: Bazan loses.

court of appeals' holding that art. 6055 [now Tex. Local Gov't Code § 87.001] was intended to prevent civil removal for official misconduct in a prior term); *Williams v. State,* 142 Tex.Crim. 155, 150 S.W.2d 803, 805 (1941) (acts barring prosecution or removal means "offense[s] committed relating to misfeasance of office," not all criminal acts); *see also* Tex. Atty Gen. Op. GM–749 (1939) (art. 5986 [now § 87.001] applies only to civil actions for the removal of officer and has no application to the prosecution of officers for violations of the penal statutes).

1. The Court treats the constitutional reference to "other high crimes" as a blanket phrase that encompasses all felonies. 251 S.W.3d at 41. I do not quarrel with this interpretation, but I note that our colleagues on the Texas Court of Criminal Appeals have taken a different stance. *Perez v. State,* 11 S.W.3d 218, 221 (Tex.Crim.App.2000) (en banc). In *Perez,* the defendant argued that he was entitled to a new trial because one of the jurors had been previously convicted of felony driving while

intoxicated. *Id.* at 219. The court of appeals agreed, holding that Article XVI, Section 2 excluded convicted felons from serving on juries. *Id.* at 220. However, the Court of Criminal Appeals reversed, relying on the doctrine of *ejusdem generis* to hold that the reference to "other high crimes" in Article XVI, Section 2 is "limited to criminal conduct which demonstrates the same type of moral corruption and dishonesty inherent in the specified offenses." *Id.* at 221. Because felony DWI did not qualify as a "high crime" under this interpretation, the juror in question was not constitutionally disqualified from service. *Id.* The reasoning in *Perez* would not affect today's result—felony theft clearly qualifies as a "high crime" involving "the same type of moral corruption and dishonesty" inherent in bribery, perjury, or forgery. However, the difference could affect future removal cases, so the Court should pay future litigants the courtesy of discussing our sister high court's precedent and either distinguish *Perez* or adopt its less-sweeping interpretation of "other high crimes."

Our analysis is complicated, however, by Section 87.001, which by its terms limits removal under the rest of Chapter 87 (including by definition Section 87.031) to post-election misconduct: "An officer may not be removed under this chapter for an act the officer committed before election to office." These nineteen words spark several vital but vexing questions and on the surface seem starkly at odds with both Article XVI's "exclude from office" command and Section 87.031's "immediate removal" language.[2] Our analysis is made tougher still by our 1989 decision in *Talamantez v. Strauss*, a factually indistinguishable case that relied on Section 87.001 to bar removal under Section 87.031 since a reelection intervened between the crime and the resulting conviction.[3] I agree with the Court that *Talamantez* was wrongly decided, not just because it flouted Article XVI, Section 2, as the Court today rightly notes, but also because it misconstrued Section 87.001.

## I. What Does "Before Election to Office" Mean?

This four-word phrase in Section 87.001 seems unambiguous on its face, but when applied to a *reelected* official like Bazan, it gets murky. In such cases, does "before election to office" mean before the first election or before the most recent election? Bazan's crime occurred in 2001, after his 2000 election but before his 2004 reelection. So does Section 87.001 only forgive misdeeds that predate Bazan's initial election (thus requiring him to remain on the straight and narrow once he takes office) or does it mean, as Bazan insists, that he cannot be removed under Chapter 87 for misdeeds committed while in office but that predate his most *recent* election (thus forgiving his 2001 misconduct)?

I think it manifestly means the former and relates to an official's entire tenure in office, not merely his current term in office. Our Constitution's concern for the integrity of public office allows no room for the notion that reelection operates to spare elected officials from the full effects of felonies committed during a prior term, whether or not they were known to the voting public. As I read Section 87.031, a felony conviction based on acts committed at any time while holding office requires immediate expulsion, whether the crime occurred during the present term or during a previous term. The protection provided by Section 87.001 applies only to acts committed before an officer's first "election to office." Granting legal sanctuary to public officers convicted of felonies committed while in office is hard to conceive and, as a judge, even harder to confirm. An official who commits a high crime on the last day of his prior term is no less unfit than an official who commits a high crime on the first day of his present term.

My view, however, has not carried the day with this Court historically. We held eighty-four years ago in *Reeves v. State*, a state-initiated quo warranto action, that in a removal proceeding targeting an official who had been reelected, the then-applica-

---

**2.** Election Code Section 141.001(a)(4) is equally clear: "To be eligible to be a candidate for, or elected or appointed to, a public elective office in this state, a person must ... have not been finally convicted of a felony...." This provision is unambiguous but also inapplicable since Bazan has not yet exhausted his post-conviction appeals. " 'The law is settled that a conviction from which an appeal has been taken is not considered to be a final conviction until the conviction is affirmed by the appellate court and that court's mandate of affirmance becomes final.' " *Fletcher v. State*, 214 S.W.3d 5, 6 (Tex.Crim. App.2007) (quoting *Jones v. State*, 711 S.W.2d 634, 636 (Tex.Crim.App.1986)).

**3.** 774 S.W.2d 661 (Tex.1989) (per curiam).

ble phrase "prior to his election to office" barred removal during Term B for derelictions that occurred during Term A.[4] *Reeves* held that removal must occur during the same term as the misconduct and that reelection, in effect, absolves an official of the office-related consequences of any Term–A sins.[5]

The facts in *Reeves* are somewhat similar to those in this case (although *Reeves* was a quo warranto removal action, not, as here, a proceeding where removal is an automatic consequence of a felony conviction). Both involve county officials who committed third-degree felonies while in office but prior to being reelected. Reeves was elected sheriff in 1920, reelected in 1922, and indicted in 1923 for acts committed during 1921–23, spanning both terms.[6] The jury found misconduct in both terms, and Reeves argued on appeal that he was protected from removal by Article 6055 (predecessor to Section 87.001) for any first-term offenses.[7] The Court agreed: "Reeves ... could not be removed from office during his second term for offenses committed during his first term." [8] The Court reasoned that removal could only be predicated on "acts committed subsequent to an election to the term the officer is holding, and from which it is sought to oust him." [9] The Court concluded that evidence of misconduct during a prior term is prejudicial and inadmissible, and a jury mulling removal may only consider same-term misconduct.[10]

We reaffirmed *Reeves's* "reelection restricts removal" rule in *Talamantez,* where we held a county commissioner could not be removed from office following his conviction for pre-reelection acts[11] In the instant case, Bazan argues that the trial court's removal order "directly contradicts Section 87.001," which "trumps Section 87.031."

I frankly am troubled by both *Reeves* and *Talamantez,* and I flatly reject their implicit message that Section 87.001 protects officials who commit felonies while in office so long as they succeed in concealing their misbehavior so that any resulting conviction comes, if at all, after reelection. As these two cases construe Section 87.001, you can win election, commit a felony, win reelection, get convicted, and stay in office. Indeed, if two elected officials were partners in crime, but Official A was reelected before being convicted while Official B was convicted before being reelected, identical offenses could result in opposite results based on election timing. It is unimaginable to me that taxpayers would underwrite the former's salary and the latter's incarceration. What a deal: You can break the very same laws that taxpayers pay you to enforce, the very same laws that you swore to "preserve, protect, and defend," [12] all without fear of removal if voters reelect you before jurors convict you. It gets better. Under Bazan's view, you can hold elected office yet be disqualified from voting; [13] you can

---

**4.** 114 Tex. 296, 267 S.W. 666, 667, 669 (1924).

**5.** *Id.* at 669.

**6.** *Id.* at 667; *Reeves v. State,* 258 S.W. 577, 577–78 (Tex.Civ.App.-Texarkana 1924), *rev'd,* 114 Tex. 296, 267 S.W. 666.

**7.** *Reeves,* 267 S.W. at 667, 669.

**8.** *Id.* at 669.

**9.** *Id.*

**10.** *Id.*

**11.** *Talamantez v. Strauss,* 774 S.W.2d 661, 661–62 (Tex.1989) (per curiam).

**12.** Tex. Const. art. XVI, § 1(a).

**13.** Tex. Elec.Code §§ 11.001(a)(1), 11.002(4).

serve as a law enforcement officer even though, worse than hapless Barney Fife, you cannot carry even an unloaded firearm;[14] you can (according to a formal Attorney General opinion) serve as a peace officer even though your peace officer's license has been revoked.[15] Few things undermine public confidence in government more than elected officials who exude "do as I say, not as I do" sanctimony, except perhaps a legal system that enshrines such sanctimony by divorcing crimes from consequences. Texas law should not reward officials for being adept at hiding their criminality until after the election passes, and while some other states' laws expressly limit removal to misconduct committed during the same term,[16] Texas law, in my view, does not require that removal be confined to present-term acts. The expiration of a term in no way prevents prosecution under the criminal law; nor should it prevent ouster under the removal law.

A straight-up application of *Reeves* and *Talamantez* would require us to reinstate Bazan, but I believe these two cases were wrongly decided. They should not be clarified or distinguished, but overruled altogether.[17] The Court today agrees that our 124–word opinion in *Talamantez* ignored the Constitution's controlling language, which plainly requires laws that "exclude from office" certain people—namely felons.[18] Beyond this oversight, I believe *Talamantez* is wrong for another reason.

## II. What Does "Act" Mean?

Our decision in *Talamantez* relied exclusively on Section 87.001's broad language-

no removal "for an act the officer committed before election to office"-and on its face the word "act" sweeps broadly, appearing to forgive felonies as mercifully as misdemeanors. In my view the interpretation that best honors Article XVI's directive to exclude felons is one that reads "act" in Section 87.001 to mean a nonfelonious act, including behavior that is not necessarily criminal at all. "Low-crime" convictions don't make you constitutionally ineligible to hold office, and the only pertinent statute that mentions misdemeanors is Section 87.031, which requires immediate removal upon conviction for "a misdemeanor involving official misconduct."

Notably, Section 87.001 uses the generic word "act"—not "high crime[ ]" (as in Article XVI, Section 2) or "felony" (as in Section 87.031) or anything that suggests "act" even means "unlawful act." True, Subchapter C ("Removal by Criminal Conviction") is focused solely on criminal wrongdoing, but not Subchapter B ("Removal by Petition and Trial"), where the three listed grounds for removal—incompetency, official misconduct, and intoxication—are not all criminal in nature.[19] You may be incompetent at your job or drunk at your house, or both, but neither is a crime under Texas law. Read naturally and contextually, "act" in Section 87.001 includes noncriminal wrongdoing, and in my view, the criminal wrongdoing it does include must be nonfelonious wrongdoing, and *only* nonfelonious wrongdoing.

Construing "act" as excluding "high crimes" reconciles every constitutional and

---

14. Tex. Penal Code § 46.04(a).

15. Op. Tex. Att'y Gen. No. JC–0514 (2002).

16. *See State v. Hasty,* 184 Ala. 121, 63 So. 559, 561 (1913); *Eagleton v. Murphy,* 348 Mo. 949, 156 S.W.2d 683, 686 (1941).

17. Because the Court declines to overrule *Reeves,* the rest of my opinion presumes *Reeves's* continuing vitality.

18. Tex. Const. art. XVI, § 2.

19. Tex. Loc. Gov't Code § 87.013(a).

statutory provision pertinent to this case. It respects Article XVI, Section 2 as well as Sections 87.001 and 87.031. Reading "act" the opposite way, to include felonies such that, as Bazan contends, Section 87.001 "trumps Section 87.031" and bars removal of Term B officials for Term B convictions based on Term A crimes, clashes head-on with the Constitution's insistence that those convicted of "high crimes" be excluded from public office. Bazan's proposed construction, in my view, means one of two things: (1) Sections 87.001 and 87.031 are hopelessly irreconcilable, or (2) Section 87.001 is unconstitutional because it prescribes what Article XVI proscribes. Because we try to interpret statutes in away that avoids constitutional conflicts,[20] I would read "act" in Section 87.001 to excuse only misdemeanors and noncriminal acts, an interpretation that reads related statutes relatedly and effects the Constitution's unequivocal intent that convicted felons not hold office.

In sum, Section 87.001 is a statutory exception to automatic removal under Section 87.031, and given Article XVI's "no felons" mandate, "act" must be construed narrowly to mean a nonfelonious act that occurred before the officer ever entered office.

### III. What Does "Under This Chapter" Mean?

In my view, the Court strays unnecessarily from Section 87.001's enacted text, which bars removal "under this chapter"[21] for pre-election acts. Notwithstanding this whole-chapter declaration, the Court scours the background minutiae of 130–year–old statutes to conclude that "this

chapter" does not really mean the entire chapter, but only Subchapter B, which governs removal for civil misfeasance. The Court concludes that Subchapter C is untouched, that Section 87.001 does not do what it says it does.

I disagree. The Court's civil-criminal distinction in Part III makes eminent sense, but we must take the Legislature at its word: "under this chapter" in Section 87.001 means just that—the chapter, the whole chapter, and nothing but the chapter—nothing more, but just as surely nothing less. I presume "under this chapter" does not mean "under Subchapter B" because the Legislature drafted, voted on, and approved the former, not the latter.[22] We must be driven by what lawmakers did, not driven to spruce up what they did because we think they meant to do something else. Having said that, the Court and I arrive at largely the same bottom-line view of what type of misbehavior requires removal.

The only external restriction on the scope of Section 87.001 is that imposed by the Texas Constitution, and Section 87.001 is powerless to thwart the constitutionally required removal of officials convicted of "high crimes."[23] Beneath this constitutional ceiling, Section 87.001 can freely forgive not only the grounds for removal listed in Subchapter B but also (and this is where I differ slightly from the Court) any Subchapter–C criminal offenses that do not rise to the level of "high crimes." Section 87.001 may properly be interpreted to protect officials from removal for misdemeanor-level crimes, including those committed after the official first took office,

---

**20.** *See* TEX. GOV'T CODE § 311.021(1); *Brooks v. Northglen Ass'n,* 141 S.W.3d 158, 169 (Tex. 2004).

**21.** TEX. LOC. GOV'T CODE § 87.001.

**22.** *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644, 651 (Tex.2006).

**23.** *See* TEX. CONST. art. XVI, § 2; *see also In re Bates,* 555 S.W.2d 420, 428 (Tex.1977).

without offending the Constitution. So while the Court says Section 87.001 applies only to acts of civil misfeasance (Subchapter B) and never intersects with Section 87.031 (Subchapter C), I believe reading "under this chapter" to mean "under Subchapter B" rides a tad roughshod over the language of Section 87.001 and forgives a tad less than is required.

### IV. Conclusion

Elections may forgive a multitude of sins, but in Texas, once you swear your first oath of office, staying in office means staying felony-free.

To be absolutely clear, I see the interaction of Texas legal authority this way:

- "High-crime" convictions (felonies)—either before or after you were first elected—make you constitutionally ineligible to run for office or to remain in office.

- Thus, if you are a convicted felon, you cannot seek office to begin with, and if you are convicted of a felony after you are elected—no matter when the underlying acts took place—you cannot remain in office.

- To satisfy Article XVI, Section 2, Section 87.001 can only forgive acts that are not constitutionally disqualifying—that is, misdemeanors or non-criminal acts; it cannot forgive felonies.

This interpretation, in my view, honors the supremacy of the Constitution's "no felons" directive while also reconciling and giving effect to the text of Sections 87.001 and 87.031. Because the Court's construction, in my view, achieves the former at some expense to the latter, I concur in the judgment only.