

**IN THE**
**TENTH COURT OF APPEALS**

_____

**No. 10-08-00259-CV**

**IN RE DONNA MURRAY**

_____

**Original Proceeding**

**O P I N I O N**

Donna Murray seeks a writ of mandamus compelling Respondent, the Honorable George Allen, assigned judge to the 13th Judicial District Court of Navarro County, to dismiss or abate a lawsuit seeking her removal as justice of the peace and to vacate an order suspending her without pay. We deny the relief requested.

**FACTUAL BACKGROUND**

Murray is Justice of the Peace, Precinct 3, in Navarro County. John Jackson, elected judge of the 13th Judicial District Court of Navarro County, and Connie Mayfield, another justice of the peace in Navarro County, filed a complaint with the

State Commission on Judicial Conduct,[1] alleging that Murray had committed several acts of official misconduct and incompetence. After Murray was indicted for possession of methamphetamine, the Commission entered an order suspending Murray *with* pay.

The State, acting through and on the relation of Jackson and Mayfield, subsequently filed a petition in district court requesting Murray's removal on the same grounds as those alleged in their administrative complaint. Jackson recused himself and Respondent was assigned to the case. The district attorney's office also moved for recusal in light of Murray's pending drug charge and requested that Respondent appoint the Criminal Justice Division of the Attorney General's Office as special prosecutor. Respondent granted the motion.

Respondent further suspended Murray *without* pay, after which Murray filed three separate motions. In a motion to show authority, she argued that the assistant attorney general assigned to the case had no authority to act as attorney *pro tem*. In a motion to abate, she contended that, because a complaint had been filed with the Commission first, the Commission has primary jurisdiction over the case and the lawsuit should be abated pending a final decision by the Commission. In a motion to dismiss, Murray sought dismissal on jurisdictional grounds. Respondent denied these motions.

In her petition for mandamus, Murray argues that: (1) Respondent should have granted either her motion to dismiss or her motion to abate because the Commission

---

[1]    The Commission is an agency of the Judicial Department of state government, created by the Texas Constitution, and the Legislature is authorized to pass consistent laws to further carry out its purpose. *See* TEX. CONST. art. V, § 1-a.

possesses primary jurisdiction over the removal proceedings (issues one and two); and (2) Respondent should have granted her motion to show authority because the Attorney General lacks authority to act (issue three).[2]

## MANDAMUS REQUIREMENTS

Generally, mandamus relief is available only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Bexar County Criminal Dist. Attorney's Office,* 224 S.W.3d 182, 185 (Tex. 2007) (orig. proceeding); *In re Tex. Dep't of Family & Protective Servs.,* 210 S.W.3d 609, 612 (Tex. 2006) (orig. proceeding). Mandamus is also available where: (1) the order being challenged in a mandamus proceeding is void; or (2) jurisdictional conflicts exist between a trial court and an administrative agency. *In re Sw. Bell Tel. Co.,* 35 S.W.3d 602, 605 (Tex. 2000) (per curiam) (void order); *In re Keeling,* 227 S.W.3d 391, 395 (Tex. App.—Waco 2007, orig. proceeding) (same); *In re Entergy Corp.,* 142 S.W.3d 316, 321-22, 324 (Tex. 2004) (orig. proceeding) (jurisdictional conflicts); *In re Luby's Cafeterias*, 979 S.W.2d 813, 816-18 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (same).

## JURISDICTION

Murray's first and second issues are based on the theory that Respondent was required to either dismiss or abate the lawsuit because the Commission possesses

---

[2] In an unpublished order, we stayed further proceedings in the trial court, including enforcement of the order suspending Murray without pay. In a separate published order, we requested amicus briefing from potentially interested parties, including the Office of the Attorney General, the State Commission on Judicial Conduct, and the Justices of the Peace and Constables Association of Texas. *See In re Murray*, 257 S.W.3d 861 (Tex. App.—Waco 2008, order) (per curiam). We received an amicus brief from the Commission.

primary jurisdiction over the removal proceedings, thereby depriving Respondent of authority to act and making void his order suspending Murray without pay.

## Applicable Law

An agency can have exclusive or primary jurisdiction.[3] *See Subaru of Am. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002). Exclusive jurisdiction gives the agency "*sole* authority to make an initial determination in a dispute." *Id.* Exclusive jurisdiction applies when a pervasive regulatory scheme is the exclusive means of remedying the problem addressed. *See id.* If an agency possesses exclusive jurisdiction, the trial court must dismis*s* the suit. *Id.*

Primary jurisdiction "allocate[s] power between courts and agencies when *both* have authority to make initial determinations in a dispute." *Id.* Primary jurisdiction applies where: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations. *Id.* If an agency possesses primary jurisdiction, the trial court should abate the suit and "suspend finally adjudicating the claim until the agency has an opportunity to act on the matter." *Id.*

Whether an agency has exclusive or primary jurisdiction is a question of law that we review *de novo*. *See id.* at 222.

---

[3] For purposes of analyzing its jurisdiction vis-a-vis the courts, we consider the Commission's powers in the same way that we would analyze the powers of an agency of the Executive Branch of state government.

## Analysis

Under Article V of the Texas Constitution, both the Commission and the district court possess authority to make initial determinations in disputes involving the removal of a justice of the peace. Section 1-a gives the Commission authority to recommend removal. *See* TEX. CONST. art. V, § 1-a(6)(A); *see also* TEX. GOV'T CODE ANN. § 33.002(a) (Vernon 2004) (Commission was established under section 1-a and has the powers provided by that section); *In re Rose*, 144 S.W.3d 661, 672 (Tex. Rev. Trib. 2004) (section 1-a applies to justices of the peace); TEX. R. REM'L/RET. JUDG. 1(b) (West 2008) ("'Judge' means…any Justice of the Peace"). Section 24 gives the district court authority to order removal. *See* TEX. CONST. art. V, § 24 ("…justices of the peace…may be removed by the Judges of the District Courts…"). As these two provisions make clear, the Commission does not possess exclusive jurisdiction over the removal of a justice of the peace, but the primary-jurisdiction doctrine potentially applies. *See Subaru*, 84 S.W.3d at 221. For this reason, dismissal would not be appropriate. *Id*. Abatement would be the proper remedy if primary jurisdiction applies. *Id*.

Citing section 1-a(13), *In re Carrillo*, 542 S.W.2d 105 (Tex. 1976), and *In re Lowery*, 999 S.W.2d 639 (Tex. Rev. Trib. 1998), the State suggests that the Commission does not have primary jurisdiction because both a removal proceeding before the Commission and a removal proceeding before the district court may be pursued simultaneously. The Commission's amicus brief supports this position.

Section 1-a(13) provides that removal by the Commission is "alternative to and cumulative of" other methods of removal provided in the Constitution. TEX. CONST. art.

V, § 1-a(13). In *Carillo*, the Commission initiated removal proceedings against Carillo, a district judge, pursuant to section 1-a. *See Carrillo*, 542 S.W.2d at 106. The Commission appointed a master to hear evidence and file a report. *Id*. A pending impeachment proceeding in the Texas Senate was postponed to await the master's report. *Id*. at 107. After the master found Carrillo guilty of eleven of twelve charges, the Senate voted to remove Carillo from office. *Id*. at 106-07. The Commission subsequently filed its own findings with the Supreme Court and recommended removal. *Id*. at 106. Carrillo filed a petition to reject this recommendation, alleging in part that the case was moot because of the impeachment proceeding. *Id*. The Supreme Court disagreed because the Constitution provides several methods for removal of district judges, none of which is an "exclusive remedy." *Id*. at 108. "[M]ore than one method may be pursued concurrently." *Id*.

In *Lowery*, Justice of the Peace Lowery challenged the Commission's recommendation of removal under section 1-a, arguing that section 24 "specifically includes justices of the peace, it is a more specific provision, taking precedence over the more general provisions of § 1-a." *Lowery*, 999 S.W.2d at 649. The Review Tribunal rejected this contention:

> Although the Constitution provides multiple methods for the removal of a judge, none is an exclusive remedy and *more than one may be pursued concurrently*. In the instant matter, the proceedings to remove Respondent were conducted under art. V, § 1-a. Subsection 13 specifically provides that § 1-a is an alternative to, and cumulative of, the methods of removal of persons holding an office named in Paragraph A of Subsection 6. In turn, Paragraph A of Subsection 6 authorizes the removal of any justice or judge of the courts established in art. V, § 1. This latter provision clearly encompasses justices of the peace.

*Id*. at 649-50 (emphasis added).

Murray attempts to distinguish *Lowery* on grounds that "Lowery attempted to avoid the Commission by arguing it should have been a civil removal action." This distinction does not render *Lowery* inapplicable. The Review Tribunal's ruling suggests that proceedings would have been proper under either section 24 or section 1-a. *See id*. Its reasoning is relevant to whether different proceedings may occur simultaneously.

As for *Carillo*, Murray argues that the Senate's postponement of its proceeding to await the master's report demonstrates that two proceedings cannot be pursued simultaneously. *See Carrillo*, 542 S.W.2d at 107. However, the Commission made its recommendation of removal *after* the Senate voted to remove Carillo. *Id*. at 106-07. Proceedings before the Commission were ongoing at the time the Senate proceeded with the impeachment process.

Murray next contends that *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78 (Tex. 2008), refutes the theory that proceedings may be pursued simultaneously. In *Igal*, the Supreme Court considered "whether TWC's final adjudication denying recovery of wages precludes the subsequent filing of a common law wage claim for the same wages in state court." *Igal*, 250 S.W.3d at 81. Igal had filed a wage claim with the TWC and, after receiving unfavorable rulings, filed suit in district court. *See id*. The trial court found that res judicata barred Igal's suit. *Id*.

The Supreme Court held that the Payday Law, which authorized Igal's administrative complaint, is not the "sole and exclusive remedy…but is rather an

alternative remedy that is cumulative of the common law." *Id*. at 88. It "offers an alternate means to the same remedy." *Id*.

> Employees were then given a choice between an administrative process designed to adjudicate quickly relatively small claims or to have their day in court and the longer and more involved process of the judicial system. The Legislature could have created two consecutive procedures (an administrative proceeding followed by a new judicial proceeding for the dissatisfied party) for adjudicating these claims, but there is no indication that it did. In Texas parlance, the claimant selects which horse to ride. Once the horse crosses the finish line, a claimant cannot switch horses and run the same race again, hoping for a different outcome.

*Id*. at 92 (internal citations omitted). Igal's suit was barred because he could either file an administrative proceeding under the Payday Law or a common law debt action in state court, but chose the former. *See id*. at 93.

We note three important distinctions between *Igal* and Murray's situation. First, in *Igal*, the TWC had issued a final decision at the time Igal filed suit; thus, the Supreme Court's decision hinged on application of the res judicata doctrine. *Id.* at 92-93. Here, the Commission has not yet issued a final decision and the res judicata doctrine is not at issue.

Second, Jackson and Mayfield had a duty to file a complaint with the Commission. *See* TEX. CODE JUD. CONDUCT, Canon 3(D)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit G app. B (Vernon 2005) (requiring judges to take "appropriate action" after receiving information "clearly establishing" a violation of the Code of Judicial Conduct). After filing a complaint, they have little or no further involvement in the administrative process. *See* TEX. R. REM'L/RET. JUDG. 1-18 (West 2008) (rules governing the disciplinary process); *see also* TEX. GOV'T CODE ANN. §§ 33.021-.038 (Vernon 2004)

(Commission's powers and duties, including requirement in section 33.033 that the Commission notify the complainant of the case disposition and complainant's right to reconsideration of a dismissed complaint as provided by section 33.035).

Third, unlike the Payday Law, section 1-a(13) contains specific language authorizing concurrent removal proceedings. *See* TEX. CONST. art. V, § 1-a(13). Case law confirms this interpretation. *See Carrillo*, 542 S.W.2d at 108; *see also Lowery*, 999 S.W.2d at 649-50.

Accordingly, we hold that the Texas Constitution expressly allows for the pursuit of concurrent removal proceedings against a justice of the peace before the Commission and in district court. *See* TEX. CONST. art. V, § 1-a(13); *see also Carrillo*, 542 S.W.2d at 106; *Lowery*, 999 S.W.2d at 649-50. The Commission possesses neither exclusive nor primary jurisdiction. Respondent did not abuse his discretion by denying Murray's motion to abate or her motion to dismiss.

## AUTHORITY TO ACT

In issue three, Murray contends that Respondent abused his discretion by denying her motion to show authority, arguing that neither constitutional nor statutory provisions authorize the Attorney General to act on behalf of Jackson and Mayfield.

The county or district attorney ordinarily represents the State in a civil removal action. *See* TEX. LOC. GOV'T CODE ANN. § 87.018(d)-(e) (Vernon 2008).[4] However, Navarro County does not have a county attorney and the district attorney was recused.

---

[4] Article V section 24 of the Texas Constitution is one of the "constitutional directives" from which Subchapter B of Chapter 87, which governs civil removal proceedings, is derived. *In re Bazan*, 251 S.W.3d 39, 44 (Tex. 2008) (orig. proceeding).

Respondent could thus appoint an attorney *pro tem*.[5]  *See In re Guerra*, 235 S.W.3d 392, 410 (Tex. App.—Corpus Christi 2007, orig. proceeding).

Citing *State ex rel. Downs v. Harney*, 164 S.W.2d 55 (Tex. Civ. App.—San Antonio 1942, writ ref'd w.o.m.), and *Garcia v. Laughlin*, 285 S.W.2d 191 (Tex. 1955), Murray argues that the Attorney General is not the proper authority to prosecute a civil removal action.  In *Downs*, the San Antonio Court concluded that, "since there is no constitutional or statutory provision which vests in the Attorney General the power, or makes it his duty, to institute actions for the removal of county officers under the provisions of Art. 5, §24, of the Constitution, and Art. 5970 of the Statutes [now Chapter 87], supra, the Attorney General cannot assert or exercise such power and duty in this action."  *Downs*, 164 S.W.2d at 58.  "[S]uch power and duty vests in the county attorney."  *Id*.  In *Garcia*, the Supreme Court relied on *Downs* in reaching its decision that the "Attorney General does not possess the power to *institute* [] removal proceedings."  *Garcia*, 285 S.W.2d at 195 (emphasis added).

In both *Downs* and *Garcia*, the Attorney General participated in *instituting* the removal action.  Here, the Attorney General did not join in the institution of removal proceedings against Murray, but was appointed as attorney *pro tem*.  He was not acting in the capacity of Attorney General.  *Garcia* and *Downs* are, therefore, inapplicable to the specific facts of this case.  The appropriate question then becomes whether the Attorney General could act as attorney *pro tem*.

---

[5]     Under section 87.018(e) and (f), a county attorney from an adjoining county shall be appointed by the commissioners where the county or district attorney is the subject of the removal action.  *See* TEX. LOC. GOV'T CODE ANN. § 87.018(e), (f) (Vernon 2008).

The State suggests that article 2.07 of the Code of Criminal Procedure expressly authorizes this appointment. Under Article 2.07, a judge may appoint "any competent attorney," including an assistant attorney general, to represent the State where the "attorney for the state is disqualified to act in *any case or proceeding*, is absent from the county or district, or is otherwise unable to perform the duties of his office, or in any instance where there is no attorney for the state." TEX. CODE. CRIM. PROC. ANN. art. 2.07(a), (f) (Vernon 2005) (emphasis added). The State argues that article 2.07 applies to civil cases because it does not distinguish between civil and criminal cases. *See Hatch v. State*, 958 S.W.2d 813, 815-16 (Tex. Crim. App. 1997) ("plain language" of section 62.201 of the Government Code "makes no distinction between civil and criminal cases" and the "Legislature knew how to restrict statutes to civil cases," as it had done in section 62.202)*; see also* TEX. CODE. CRIM. PROC. ANN. arts. 1.051, 1.05, 2.01, 3.02, and 31.05 (Vernon 2005 & 2006 & Supp. 2008) (specifically referencing criminal cases); TEX. GOV'T CODE ANN. § 402.028 (Vernon 2005) (authorizing the Attorney General to provide assistance to a county, district, or criminal district attorney in criminal cases, but not "prohibit[ing] an assistant attorney general from appointment as attorney pro tem" under article 2.07).

Murray responds that the Code governs criminal proceedings alone. *See* TEX. CODE CRIM. PROC. ANN. art. 1.02 (Vernon 2005) ("The procedure herein prescribed shall govern all criminal proceedings"); *see also* TEX. CODE CRIM. PROC. ANN. art. 1.26 (Vernon 2005) ("The provisions of this Code shall be liberally construed, so as to attain the objects intended by the Legislature: The prevention, suppression and punishment of

crime."); *Baxter v. Tex. Dep't of Human Res.*, 678 S.W.2d 265, 267 (Tex. App.—Austin 1984, no writ) ("Code of Criminal Procedure applies only to criminal actions"). According to Murray, the Legislature could have "expressly provided for the Attorney General to be appointed attorney *pro tem* in a civil removal action," but has not done so.

We find the reasoning in *Guerra* instructive. In *Guerra*, the Corpus Christi Court considered a judge's authority to "appoint an attorney pro tem to assist a grand jury in investigating a district attorney's conduct when the district attorney has not sought recusal." *Guerra*, 235 S.W.3d at 411. Several other states had already determined that a "court has the *inherent* power to appoint an attorney pro tem when the county elected attorney is under grand jury investigation," even in the absence of statutory authority. *Id*. at 411-414 (emphasis added). Moreover, an 1862 Texas Supreme Court case had recognized that, "[i]n case of a vacancy in the office of district attorney, or in case of the district attorney's temporary disability to act, or *in any particular case where there might exist special reasons why he should not act*, any other competent person might act in the preparation of indictments, by the authorization of the court." *Id*. at 414 (emphasis added) (quoting *State v. Gonzales*, 26 Tex. 197, 199 (1862)). Accordingly, the Corpus Christi Court held that "respondent was authorized to appoint a competent person to act in relator's place, and…this authorization is explicitly derived from article 2.07 of the code of criminal procedure." *Id*. The appointment was also "implicitly authorized by a court's *inherent* power." *Id*. at 415 (emphasis added).

Assuming, without deciding, that article 2.07 does not apply to civil proceedings, we conclude that, in the absence of a specific statutory provision, Respondent's inherent

power authorizes the appointment of an attorney *pro tem* to represent the State where the district or county attorney cannot act. *See id.* at 414; *see also Trigg v. State*, 49 Tex. 645, 675 (1878) (in a removal proceeding filed pursuant to section 24, "[i]t would seem proper, also, for the district attorney or county attorney, when not disqualified, to prosecute the case on behalf of the State, --not doubting, however, the authority of the judge to request other attorneys to act, where the State, for any cause, is not otherwise represented, or to act as assistants of the State's counsel"). In such circumstances, the attorney *pro tem* assumes all duties of the office, which includes representation of the State in a civil removal action. *See Guerra*, 235 S.W.3d at 409 ("A 'district attorney pro tem' is appointed by the district court, and after taking the oath of office, assumes the duties of the elected district attorney and, in effect, replaces the latter in performing germane functions of office for purposes contemplated by the appointment."); *see also* TEX. LOC. GOV'T CODE ANN. § 87.018(d).

Respondent's appointment did not give the Attorney General the authority to institute removal proceedings, thereby enlarging the Attorney General's power, but merely authorized an assistant attorney general to act as a substitute where the county or district attorney was unable to act. *See Guerra*, 235 S.W.3d at 409. We, therefore, hold that Respondent acted within his inherent power when appointing the Attorney General as attorney *pro tem* and did not abuse his discretion by denying Murray's motion to show authority.

## CONCLUSION

Because Murray has not established her right to mandamus relief, we deny her petition for writ of mandamus. Our July 23, 2008 stay order will remain in effect for fourteen days following the date of this opinion.

                                             FELIPE REYNA
                                             Justice

Before Justice Vance,
      Justice Reyna, and
      Justice Mazzant[6]
Writ denied
Opinion delivered and filed November 5, 2008
[OT06]

---

[6] The Honorable Amos L. Mazzant, Justice of the Fifth Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Texas pursuant to section 74.003(a) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(a) (Vernon 2005).