**AFFIRM; and Opinion Filed March 28, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01179-CR

## DERICK DEWAYNE EVANS, Appellant
## V.
## THE STATE OF TEXAS, Appellee

### On Appeal from the 363rd Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F1001193W

# OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Lewis

On the Court's own motion, we withdraw our opinion issued January 31, 2014 and vacate our judgment of that date. The following is now the opinion of the Court.

A jury found appellant Derick Dewayne Evans guilty of engaging in organized criminal activity, based on an underlying offense of gambling promotion, and assessed appellant's punishment at confinement for two years. Subsequently, that sentence was suspended; appellant was placed on community supervision for two years and ordered to pay a fine of $10,000. Appellant raises nine issues on appeal. We affirm the trial court's judgment.

*Background*

Appellant was charged by indictment with the offense of engaging in organized criminal activity based on a raffle drawing he organized to benefit his political campaign. Appellant

pleaded not guilty and proceeded to trial before a jury in November 2011. After the 2011 trial ended with a hung jury, a second trial before a jury was held in June 2012. The second trial ended with a jury finding appellant guilty as charged. Appellant filed two motions for new trial, both of which were overruled by the trial judge. Appellant also sought a writ of mandamus from this Court regarding his suspension from office which we denied.[1] Now appellant appeals the trial court's judgment.

### *Sufficiency of the Evidence*

In his first issue, appellant argues the evidence was legally insufficient to support his conviction for engaging in organized criminal activity. He argues the State failed to prove beyond a reasonable doubt that appellant, knowingly for gain, committed the offense of gambling promotion or that there was a group that intended to work together in a continuing course of criminal activities. Appellant contends the State failed to prove he (1) "distributed prizes by chance to persons who paid consideration for a chance to win anything of value" and (2) "was a part of a combination of three or more people whose purpose was to promote an illegal lottery." We have reviewed the evidence and conclude that it is sufficient to support appellant's conviction.

The State charged appellant with engaging in organized criminal activity, based on the underlying offense of gambling promotion. In pertinent part, the indictment charged as follows:

EVANS, DERICK DEWAYNE
* * *

did then and there commit the offense of gambling promotion in violation of section 47.03 of the Texas Penal Code, to-wit: the Defendant did then and there, for gain, knowingly set-up and promote a lottery, to wit: a raffle drawing held on or about December 20, 2008;

---

[1] *See In re Derick Dewayne Evans,* 401 S.W.3d 921 (Tex. App.—Dallas 2013, orig. proceeding).

and said Defendant did then and there commit said offense with the intent to establish, maintain, and participate in a combination, and in the profits of a combination, who collaborated in carrying on said criminal activity.

When reviewing the legal sufficiency of the evidence, we apply well-established standards. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). We view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Wise*, 364 S.W.3d at 903. The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319.

A person commits the offense of gambling promotion "if he intentionally or knowingly . . . for gain, sets up or promotes any lottery or sells or offers to sell or knowingly possesses for transfer, or transfers any card, stub, ticket, check, or other device designed to serve as evidence of participation in any lottery." TEX. PENAL CODE ANN. § 47.03(a)(5) (West 2011). A person commits the offense of engaging in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit . . . any gambling offense punishable as a Class A misdemeanor." *Id.* § 71.02(a)(2) (West Supp. 2013). "Combination" means three or more persons who collaborate in carrying on criminal activities. *Id.* § 71.01(a) (West 2011). "Conspires to commit" means that a person agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense and that person and one or more of them perform an overt act in pursuance of the agreement. *Id.* § 71.01(b) (West 2011). An agreement constituting conspiring to commit may be inferred from the acts of the parties. *Id.*

*Gambling Promotion*

We begin with appellant's assertion that the evidence was insufficient to prove he distributed prizes by chance to persons who paid consideration for a chance to win anything of value. The record reveals appellant's Campaign Finance Report for the period July 1, 2007 through December 31, 2007 lists political contributions from the sale of "raffle tickets" and political expenditures for "raffle prizes." Multiple witnesses testified that while employed under appellant in 2008, they were called out of a morning briefing meeting in groups; each was given 50 raffle tickets and told to sell them. Lieutenant Tracey Gulley and Sergeant Kelvin Holder were distributing tickets in the precinct parking lot, one reading aloud the ticket numbers and distributing tickets while the other wrote down each officer's name along with the ticket numbers they were given. The tickets contained the following language:

> "Keep Caring & Committed Law Enforcement Leadership Working for Our Community"
> Support Constable Derick Evans
> 1st Prize An XBOX 360(60G) Pro System
> 2nd Prize A Sony PSP
> 3rd Prize A (2G) MP3 Player
> Drawing to be held Saturday, December 20, 2008 (Need not be present to win)
> Paid for by Derick Evans Campaign Fund, Joe E. Bagby Treasurer
> $5.00 Donation, Thank You for Your Support.

Witnesses testified that during detail one morning, appellant referenced the selling of the raffle tickets and exclaimed, "as much as he had done for them, they should be able to do something for him in return." Several officers testified they sold all the tickets they could and then bought the remainder themselves. The officers reported they turned in their ticket proceeds to Gulley in her precinct office and she checked off their names from the distribution list. Consistent with the officers' testimony, appellant's Campaign Finance Report for the period July 1, 2007 through December 31, 2007 lists several officers' names as contributors showing they contributed $250 toward appellant's campaign. On December 20, 2008, the precinct held a Christmas party at

–4–

which time appellant drew three raffle ticket stubs out of a bag and awarded the three prizes listed on his Campaign Finance Report for the period July 1, 2007 through December 31, 2007 as "raffle prizes." The testimony consistently reveals tickets were only given to people who paid $5.00 for a ticket. Also, the testimony consistently reveals the drawings for the prizes were purely by chance and the only ticket stubs in the bag at the time of the drawings were stubs from the raffle tickets sold.

Nevertheless, appellant argues his purpose of selling the tickets was to raise funds for his campaign, not to promote a gambling business. The State responds that appellant, in essence, is requiring proof of motive, which though it may be "always relevant, it is never essential." *See Loudres v. State*, 614 S.W.2d 407, 411 (Tex. Crim. App. 1980). We question whether the State had to prove appellant's purpose or motive behind selling the tickets was anything other than "for gain" as required by the statute. *See* TEX. PENAL CODE ANN. § 47.03(a)(5). But even if the State was required to show purpose or motive, there was sufficient evidence. First, the tickets themselves prominently identified prizes to be awarded by drawing as an incentive for purchasing a ticket. Further, Norvis Harmon testified that appellant justified the high price of the ticket based on the value of the prizes to be won. Moreover, several officers testified that people who purchased the tickets were purchasing the chance to win a prize. Appellant reported the proceeds from the sale of the tickets on his Campaign Finance Report and deposited the proceeds into his campaign checking account which satisfies the "for gain" requirement in the statute. *See id.* From these facts, a jury could reasonably infer the main purpose of selling the raffle tickets was to induce people to pay for a chance to win a prize.

Appellant also argues the public's motive when purchasing the tickets was to support appellant's campaign and not a chance to win a prize. Appellant complains the State failed to produce testimony from a single person that the reason for purchasing a donation ticket was for

the chance to win a prize. The State responds that witnesses for the appellant testified they sold tickets to people who were paying money for the opportunity to win a prize. And again, the tickets themselves promoted the chance to win an MP3 player, PSP system, or X-Box 360. While this evidence was not directly from a member of the public who purchased a ticket, circumstantial evidence is as probative as direct evidence and can alone be sufficient to establish guilt. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). From these facts, a jury could reasonably infer the main purpose of purchasing the raffle tickets was to pay money for a chance to win a prize.

Appellant's contention that the evidence is insufficient to support his conviction is without merit. The sufficiency of the evidence must be reviewed in the light most favorable to the determination made by the finder of fact. *Jackson*, 443 U.S. at 319; *Wise*, 364 S.W.3d at 903; *see also Smith v. State*, 658 S.W.2d 172, 173 (Tex. Crim. App. 1983). The evidence in this case was legally sufficient for the jury to infer that appellant intentionally or knowingly for gain, set up or promoted a lottery; that the purpose and function of the lottery was to induce people to exchange money for a chance to enter the raffle and win one of three prizes listed on the raffle tickets; and that the purpose of exchanging money for the ticket was to enter the raffle. *See* TEX. PENAL CODE ANN. § 47.03(a)(5).

*Organized Criminal Activity*

We next address whether the State failed to prove appellant was a part of a combination of three or more people whose purpose was to promote an illegal lottery. The record also supports the jury's finding that appellant possessed the intent to establish, maintain, or participate in a combination or in the profits of a combination in connection with the gambling offense for which he was convicted. *See* TEX. PENAL CODE ANN. § 71.02. Specifically, appellant testified he has sold raffle tickets to fund his election campaigns since 2001. He admitted he

obtained the tickets himself and left them in his vehicle. He testified he told the Chief Deputy the tickets were in his vehicle and it was unlocked, the following day the tickets were no longer in his vehicle, and he did not know how or to whom they were distributed. Officers testified Gulley and Holder distributed the tickets and made a list of which officers received and sold the tickets. Officer Cooley testified he later saw appellant take the same list out of his desk drawer to verify Cooley had sold his appropriated tickets when approving a request for working an off-duty job. Gulley gathered the ticket proceeds and stubs from the officers. Appellant admitted he was given the ticket sales proceeds by Gulley and appellant deposited those proceeds into his bank account to benefit his campaign. Appellant admits, and the officers testified, various people distributed and/or sold raffle tickets with the purpose of raising funds for appellant's political campaign. And finally, after receiving the proceeds and ticket stubs, appellant conducted a raffle, drew the ticket stubs from a bag, and awarded prizes to the drawn ticket holders.

We have reviewed the evidence in the light most favorable to the determination made by the finder of fact. *See Jackson*, 443 U.S. at 319; *Wise*, 364 S.W.3d at 903; *see also Smith*, 658 S.W.2d at173. The evidence in this case was legally sufficient for the jury to infer appellant possessed the intent to establish, maintain, or participate in a combination or in the profits of a combination; appellant purchased the raffle tickets and prizes with the intent that other officers would distribute and sell the raffle tickets; the officers' purpose in distributing and selling the tickets was to facilitate a raffle generating proceeds to benefit appellant's political campaign; and appellant received and deposited the proceeds from the officers ticket sales as reported on his Campaign Finance Report for the period July 1, 2007 through December 31, 2007. This evidence supports the jury's finding appellant possessed the intent to establish, maintain, or participate with other officers in the furtherance of the gambling offense for which he was convicted. *See*

–7–

TEX. PENAL CODE ANN. § 71.02; *see also Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999).

Appellant's first issue is overruled.

### *Exclusion of Evidence*

In his second through fifth issues, appellant argues the trial court erred by excluding evidence. He specifically complains the trial court erred by excluding evidence: relevant to whether appellant knowingly participated in the promotion of an illegal lottery, relevant to the defense of mistake of fact, relevant to the defense of mistake of law, and of bias or motive of several of the State's witnesses.

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). The trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Id.*

A.      *Evidence of knowing participation in the promotion of an illegal lottery*

Appellant's second issue contends the trial court erred by excluding relevant evidence of other constables using the same fundraising techniques as appellant. He complains his raffle, like raffles held by other constables, was an "entirely legitimate activity." Appellant argues it was relevant for the jury to know that he learned this fundraising technique when he was a deputy constable and other constables used this same technique to raise campaign funds. We have already established the evidence was sufficient to support the jury's verdict that appellant was guilty of engaging in organized criminal activity based on an underlying offense of gambling promotion. Whether or not other constables' actions satisfied the elements of promotion of an illegal lottery is irrelevant to whether or not appellant's actions satisfied those elements. *See Hickman v. State* 141 S.W. 973, 974 (Tex. Crim. App. 1911). Therefore, we conclude it was not

–8–

an abuse of discretion for the trial court to determine "where" appellant learned this fundraising technique and who else might be using the same technique was irrelevant.

Appellant's second issue is overruled.

### B. *Evidence relevant to mistake of fact and mistake of law*

Appellant's third and fourth issues contend the trial court erred by excluding evidence that other constables used the same fundraising techniques as appellant because it was relevant to the defenses of mistake of fact and mistake of law; and by excluding evidence of a Texas Ethics Commission order, he was deprived of the opportunity to raise the mistake of law defense. Specifically, appellant wanted to introduce a Texas Ethics Commission order in which the Commission recognized appellant's opponent violated the law by not reporting all contributions from a fundraising raffle. Appellant contends the raffle was sanctioned by the Commission because the order failed to state the raffle was illegal.

It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense. TEX. PENAL CODE ANN. § 8.02 (West 2011). It is also an affirmative defense to prosecution that the actor reasonably believed the conduct charged did not constitute a crime and he acted in reasonable reliance upon an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question. *Id.* at § 8.03 (West 2011).

Appellant argues the excluded evidence would allow the jury to decide whether appellant possessed the required mental state for the offense, "i.e., whether Constable Evans knowingly, for gain, promoted an illegal lottery." However, appellant was charged by an indictment following the language of the statute and the State was required to prove appellant, for gain, knowingly set-up and promoted the raffle; there was no requirement to prove appellant knew his

–9–

actions were illegal. The facts relevant to appellant's conviction are: he obtained the raffle tickets, he purchased prizes to be awarded, he knew the raffle tickets were sold for gain, he took the money from the ticket sales and deposited it in his campaign bank account, a drawing was held where he picked a ticket stub by chance, and the owner of the winning ticket stub was entitled to a prize. The excluded facts about which appellant complains are facts about what other constables allegedly have done, not facts about appellant's actions. "That others had also violated the law would be no excuse or justification." *Hickman*, 141 S.W. at 974. Appellant only claims he did not know the acts he was committing were an offense; he committed the very acts he intended to commit. "No mistake of law excuses any one." *Id.*

Appellant urges this Court to find the Texas Ethics Commission has responsibility for interpreting the penal code–the law under which appellant was charged. Appellant provided this Court with the statute enabling the Texas Ethics Commission to administer and enforce campaign finance laws. *See* TEX. GOV'T CODE ANN. § 571.061 (West 2012). However, appellant failed to provide this Court with any case law or statute enabling the Texas Ethics Commission to interpret the Texas Penal Code, and we find no such grant of authority.

Appellant's third and fourth issues are overruled.

## C.     *Evidence of bias or motive of witnesses*

Appellant's fifth issue contends the trial court erred by excluding evidence attacking the credibility of the State's witnesses, Ronald Linthicum, Norvis Harmon, and Andrew Harris. Specifically, appellant claims each of these three witnesses believed he had been treated unfairly by appellant and were, therefore, biased and had motive to put appellant in the worst possible light with the jury.

A trial court's decision to exclude evidence will be upheld if it is within the zone of reasonable disagreement. *Davis*, 329 S.W.3d at 803. Error may not be predicated upon a ruling

−10−

that excludes evidence unless a substantial right of the party is affected. TEX. R. EVID. 103(a). A party should be allowed to show all facts tending to demonstrate bias, interest, prejudice, or any other motive, mental state, or status of the witness that, fairly considered and construed, might even remotely tend to affect the witness's credibility. *Hinojosa v. State*, 788 S.W.2d 594, 600 (Tex. App.—Corpus Christi 1990, pet. ref'd). However, the scope of appropriate cross-examination is not unlimited. *Carroll v. State*, 916 S.W.2d 494, 498 (Tex. Crim. App. 1996). Cross-examination may be limited to prevent harassment, prejudice, confusion of the issues, harm to the witness, and repetitive or marginally relevant interrogation. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Carroll*, 916 S.W.2d at 498.

Here, appellant complains the trial court excluded historical evidence of job-related problems for Ronald Linthicum, Norvis Harmon, and Andrew Harris. Appellant was trying to show their bias and motive for testifying against him. The jury heard Linthicum testify he had worked for the Constable's office for nineteen years and was terminated while working for appellant. Linthicum was in the process of being terminated when he filed a complaint against appellant that reported feeling coerced to sell the raffle tickets. Linthicum testified he had received an administrative warning and he knew his job was in jeopardy when he made the complaint of coercion against appellant. Linthicum's report also complained he was treated unfairly when he was denied the opportunity to work part-time jobs while other constables were allowed the same opportunities he was denied.

The jury heard Andrew Harris testify he had been disciplined by appellant and was not allowed to work off-duty jobs as a result. Harris testified he had a meeting with appellant and requested his discipline be rescinded; appellant refused to rescind the discipline and Harris was upset. Harris further testified he was involved with a group of others that filed a civil suit against appellant which was pending at the time of trial. The civil suit alleged Harris had been forced to

sell to the public or personally purchase raffle tickets for appellant's campaign. Harris filed a formal complaint with the Dallas County District Attorney regarding the forced selling of raffle tickets for appellant's election campaign as well as other issues Harris was experiencing. Harris testified his complaint to the district attorney was made one week *before* he was terminated and appellant contends the complaint was faxed to the district attorney's office the day *after* Harris was terminated.

The jury also heard Norvis Harmon testify he worked in the Constable's office until he was terminated in 2011. Harmon testified he was asked by appellant to sell raffle tickets. On cross examination, Harmon admitted his affidavit reporting the selling of raffle tickets did not include a report of his meeting with appellant directly asking Harmon to sell the tickets. Harmon testified appellant denied Harmon's request to work off-duty jobs which made him unhappy. The State introduced several off-duty requests made by Harmon which appellant had approved. Harmon testified he was also involved with the civil suit against appellant and considered himself a whistleblower for reporting appellant to the authorities.

The jury was aware that Linthicum, Harmon, and Harris all had possible motives to make false accusations against appellant. The jury had ample opportunity to judge the credibility and weigh the testimony of each witness. The record also contains documentary evidence showing possible bases for negative feelings of these three witnesses toward the appellant. Further, the State brought forth four other officers who all testified to the same facts as the three officers about whom appellant complains; they were all given, and felt coerced to sell, raffle tickets in support of appellant's campaign. We do not conclude it was an abuse of discretion for the trial court to exclude evidence tending to be needless cumulative evidence, risking confusion of the issues, or misleading the jury. *See* TEX. R. EVID. 403.

Appellant's fifth issue is overruled.

*Improper Argument*

In his sixth issue, appellant argues the trial court erred in refusing to instruct the jury to disregard a statement made by the State during closing argument. During the guilt/innocence phase of the trial, the State argued:

> Something else that I think is very interesting about his character. Everything he did, almost with exception of a few checks that they put into evidence, everything is in cash. And then we have all these expenses. They don't add up. Why do they do it in cash? There's got to be a reason, and the reason is, so they can siphon some of it off.

Appellant's counsel objected that the State's argument was a misstatement of the evidence and not a reasonable deduction from the evidence. The trial court overruled the objection. Appellant claims this argument was not a reasonable deduction from the evidence and was so extreme and manifestly improper as to justify reversal of appellant's conviction.

The State responds the argument was permissible because it was a reasonable deduction and inference from the evidence. "It is well settled that the prosecutor may argue his opinions concerning issues in the case so long as the opinions are based on the evidence in the record and do not constitute unsworn testimony." *Allridge*, 762 S.W.2d at 156 (citing *Ngoc Van Le v. State*, 733 S.W.2d 280, 286–87 (Tex. App.—Houston (14th Dist.) 1987)). *See also McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1986), *cert. denied*, 479 U.S. 871 (1986).

We review a trial court's ruling on an objection to a jury argument for an abuse of discretion. *See Montgomery v. State*, 198 S.W.3d 67, 95 (Tex. App.—Fort Worth 2006, pet. ref'd). Permissible jury argument generally falls into one of four areas: (1) summation of the evidence, (2) reasonable deductions drawn from the evidence, (3) responses to argument of opposing counsel, and (4) pleas for law enforcement. *Brown v. State* 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). The State may draw reasonable inferences from the evidence and is afforded wide latitude in its jury argument so long as the argument is supported by the evidence,

–13–

legitimate, fair, and offered in good faith. *Id.* at 572. "Error exists when facts not supported by the record are interjected; however, such error is not reversible unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused, into the trial." *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988).

Here, the State introduced testimony by several witnesses supporting the proposition that all raffle ticket proceeds were expected to be returned in cash. During his own testimony, appellant reported that he kept some cash to use when he needed to purchase something, or for paying a "D.J." or the caterer for a Christmas party. The only documentation of the funds collected from the raffle ticket sales was the list provided to appellant by Gulley and appellant's Campaign Finance Report.[2] Further, appellant testified he was given the campaign money by Gulley. Gulley had received the money from the other officers who had sold raffle tickets. Finn testified he was told "not to bring back any of the tickets, . . . just cash." Officers testified they received and turned-in cash raffle ticket proceeds. Appellant testified he took the money to the bank and deposited it into his bank account. The record contains appellant's Campaign Finance Report for the period July 1, 2007 through December 31, 2007 which shows contributions received as well as expenditures made for a raffle. Appellant testified he paid some campaign expenses with cash. We cannot conclude the trial court erred in overruling appellant's objection to the State's closing argument because the State may argue all reasonable inferences from the facts in evidence, and any error from arguing facts outside of the record is not reversible unless, in light of the record as a whole, the argument is extreme or manifestly improper. *See Brown,*

---

[2] Appellant testified he employed about seventy people. His Campaign Finance Report listed contributions from sixty-six entities, and three of those entities were named on the form as "Raffle Ticket." The contributions listed were from $5 to $250, corresponding to the testimony that this money came from the sale of the raffle tickets. Although it appears that most of the contributors were his employees, no occupation or employers were listed. Further, there was no designation that these amounts had been bundled together to include contributions and sales by his employees.

270 S.W.3d at 572. Under these circumstances, we conclude the prosecutor's argument in this case was a reasonable inference in light of all the evidence presented. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000).

Even if we had concluded the complained-of prosecutor's jury argument did not fall within a permissible category, our inquiry would not end there. In evaluating the severity of the misconduct, we must assess "whether [the] jury argument is extreme or manifestly improper [by] look[ing] at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Brown*, 270 S.W.3d at 573 & n.3. *See also Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997) (jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence to constitute reversible error). Here, the complained-of comment was brief and was not repeated. After the trial court overruled the objection, the prosecutor moved on to discuss the definition of a lottery. This record does not establish a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial. Further, considering the evidence and the nature of the offense, we are unable to attribute the jury's verdict to the prosecutor's remark. As discussed regarding the sufficiency of the evidence, the record is replete with evidence of each element of the offense, and the complained-of jury argument was with regard to what happened to the proceeds after they were received by appellant. Whether or not the proceeds of the raffle were in cash, as well as what happened to the proceeds after they were received by appellant, are not elements of the offense with which appellant was charged. In light of the record as a whole, we cannot conclude the complained-of argument was extreme or manifestly improper, nor that it affected appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Thus, we conclude that error, if any, is not reversible.

Appellant's sixth issue is overruled.

*Motion to Quash*

In his seventh issue, appellant argues the trial court erred by denying a motion to quash the indictment because the indictment failed to properly allege a necessary culpable mental state. Specifically, appellant argues the indictment fails to track the gambling promotion statute by placing the required culpable mental state of "knowingly" *after* "for gain" rather than *before* "for gain." The State responds that any error in the indictment is waived and even if it were preserved, the indictment properly stated the culpable mental state.

The State first responds appellant has waived this complaint because he failed to argue it at the pre-trial hearing devoted to the motion to quash. The reporter's record reveals that appellant's counsel did not specifically argue about the placement of the word *knowingly* in the indictment at the hearing of the motion to quash. However, appellant's counsel did state, "Your Honor, for the record, we would like to re-urge our Motion to Quash that was heard before, as it relates to the indictment." And the clerk's record reveals the Amended Motion to Quash and Exception to Substance of the Indictment contains the exact argument appellant brings before us on appeal. Consequently, we conclude appellant has preserved his argument for this appeal. *See* TEX. R. APP. P. 33.1(a)(1); *Miller v. State*, 333 S.W.3d 352, 355–56 (Tex. App.—Fort Worth, 2010, pet. ref'd).

We review de novo a trial court's denial of a motion to quash an indictment. *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). Indictments may suffer from a defect of substance or a defect of form. A defect of substance occurs when the indictment does not appear to charge an offense, when it appears on the face of the indictment that it is "barred by a lapse of time or that the offense was committed after the finding of the indictment," when "it contains matter which is a legal defense or bar to the prosecution," or if the indictment shows on its face that the trial court lacks jurisdiction. TEX. CODE CRIM. PROC. ANN. art. 27.08 (West 2006). To

determine whether the defendant had adequate notice to prepare his defense, we must first determine whether the charging instrument failed to provide some requisite item of "notice." *Olurebi v. State*, 870 S.W.2d 58, 61 (Tex. Crim. App. 1994). A charging instrument which tracks the language of a criminal statute possesses sufficient specificity to provide an accused with notice of a charged offense. *State v. Edmond*, 933 S.W.2d 120, 128 (Tex. Crim. App. 1996). An indictment should contain everything which is necessary to be proved. TEX. CODE CRIM. PROC. ANN. art. 21.03 (West 2009). A motion to quash should only be granted when the language describing the accused's conduct is so vague or indefinite that it fails to give the accused adequate notice of the acts he allegedly committed. *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988). When a motion to quash a charging instrument is overruled, a defendant suffers no harm unless he did not, in fact, receive notice of the State's theory against which he would have to defend. *State v. Moff*, 154 S.W.3d 599, 601, 603 (Tex. Crim. App. 2004); *see also* TEX. CODE CRIM. PROC. ANN. art. 21.19 (West 2009).

Appellant complains the trial court erred by failing to grant his motion to quash because the indictment failed to charge that appellant did "knowingly, for gain, promote a lottery" by placing the required culpable mental state of "knowingly" *after* "for gain" rather than *before* "for gain." We disagree. The indictment was sufficiently specific by stating the conduct for which he was being charged as "the Defendant did then and there, for gain, knowingly set-up and promote a lottery, to wit: a raffle drawing held on or about December 20, 2008." It is clear from the indictment that the "knowingly" mental state required by the applicable statute, that was a necessary element, was included in the charge. *See Oliver v. State*, 692 S.W.2d 712, 714 (Tex. Crim. App. 1985) ("[W]here there is not a material difference between the language of the statute and the language of the indictment, an indictment which alleges all of the requisite elements of the particular offense in question will not be found to be deficient simply because it

−17−

fails to *precisely* track the language of the statute."). We conclude there was no material variance between the indictment and the statute.

Furthermore, even if there were some error in the indictment, appellant would suffer harm only if he did not, in fact, receive notice of the State's theory against which he would have to defend. *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009); *see also* TEX. CODE CRIM. PROC. ANN. art. 21.19 (An indictment shall not be held insufficient, nor shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant.). Appellant's substantial rights were not harmed because the record in this case clearly shows appellant had actual notice of the charge on which the State was basing its allegations: engaging in organized criminal activity, based on an underlying offense of gambling promotion. The indictment gave appellant adequate notice of the acts he allegedly committed so that he could prepare his defense. *See Smith*, 297 S.W.3d at 267.

Appellant's seventh issue is overruled.

### *Jury Charge Error*

In his eighth issue, appellant argues the trial court erred by submitting an egregiously harmful jury charge because the application paragraph of the charge did not require the jury to find a necessary culpable mental state. The State responds that the jury charge properly stated the culpable mental state.

When reviewing the jury charge, we must first determine whether error exists. *Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1984). If we find error, we must then determine whether the error caused sufficient harm to require reversal. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza*, 686 S.W.2d at 171. When a timely objection is made at trial, reversal is required if the accused can claim "some harm." *Almanza*, 686 S.W.2d at 171. If no proper objection was made at trial, the accused must claim the error was fundamental, and he

−18−

will obtain a reversal only if the error is so egregious and created such harm that he "has not had a fair and impartial trial." *Id.* Because appellant failed to object to the charge, he must demonstrate he suffered actual egregious harm; that is, the error must be so harmful that it affected the very basis of the case, deprived him of a valuable right, or vitally affected a defensive theory. *See Warner v. State*, 245 S.W.3d 458, 461-62 (Tex. Crim. App. 2008).

A person is to be tried only on the crimes alleged in the indictment. *Castillo v. State*, 7 S.W.3d 253, 258 (Tex. App.—Austin 1999, pet. ref'd). The charge of which appellant complains begins by tracking the language of the statute and instructed:

> A person commits a Class A misdemeanor offense of gambling promotion if he *knowingly, for gain*, sets up or promotes any lottery. (emphasis added).

The application paragraph of the charge also instructed:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of December, A.D., 2008, in Dallas County, Texas, the defendant, Derick Dewayne Evans, did unlawfully then and there commit the offense of gambling promotion in violation of section 47.03 of the Texas Penal Code, to-wit: the Defendant did then and there, *for gain, knowingly* set up or promote a lottery, to-wit: a raffle drawing held on or about December 20, 2008, and said Defendant did then and there commit said offense with the intent to establish, maintain, or participate in a combination, and in the profits of a combination who collaborated in carrying on said criminal activity, then you will find the defendant guilty of Engaging in Organized Criminal Activity, as charged in the indictment. (emphasis added).

Appellant complains the jury was erroneously told appellant "was guilty if he knowingly organized the raffle" and should have been told appellant "was guilty if he knowingly, for gain, organized the raffle." Appellant argues the jury was not required to find all the necessary elements of the offense of gambling promotion because the words "for gain" were placed before "knowingly" in the indictment and in the application paragraph of the jury charge. We disagree. We do not view the challenged language in isolation, but rather in context of the entirety of the court's charge. The language "for gain" was not omitted from either the indictment or the jury charge. *See Oliver v. State*, 692 S.W.2d 712, 714 (Tex. Crim. App. 1985) ("Thus where there is

–19–

not a material difference between the language of the statute and the language of the indictment, an indictment which alleges all of the requisite elements of the particular offense in question will not be found to be deficient simply because it fails to precisely track the language of the statute. Furthermore, in construing indictments the context and subject matter in which the words are employed should be taken into consideration.") We conclude there is no material difference between the statute and the indictment; the application paragraph in the jury charge tracked the language in the indictment. *See id.* Further, we find nothing in the record revealing any contest regarding whether appellant held the raffle drawing "for gain." Appellant even testified the "profits" went to the Derick Evans campaign. Also, the definitions section of the jury charge tracked the language of the statute. Consequently, we conclude appellant did not suffer egregious harm from the language used in the jury charge.

Appellant's eighth issue is overruled.

### *Suspension from Office*

Appellant's ninth issue contends the trial court erred by suspending appellant from office. The State responds the trial court properly exercised its discretion pursuant to the local government code. The constitution provides, "Laws shall be made to exclude from office persons who have been convicted of bribery, perjury, forgery, or other high crimes." TEX. CONST. art. XVI, § 2. Local Government Code Chapter 87 governs the removal or suspension of certain government officials from office. *See* TEX. LOC. GOV'T CODE ANN. §§ 87.001–.043 (West 2008 & Supp. 2013).

Following the jury's guilty verdict, the trial court removed appellant from public office pursuant to sections 87.031 and 87.032. Section 87.031 provides:

(a) The conviction of a county officer by a petit jury for any felony or for a misdemeanor involving official misconduct operates as an immediate removal from office of that officer.

–20–

(b) The court rendering judgment in such a case shall include an order removing the officer in the judgment.

TEX. LOC. GOV'T CODE ANN. § 87.031 (West 2008). When appellant filed his notice of appeal, the trial court held a suspension hearing and found it was in the public interest to suspend appellant from office pursuant to section 87.032 which provides:

If the officer appeals the judgment, the appeal supersedes the order of removal unless the court that renders the judgment finds that it is in the public interest to suspend the officer pending the appeal. If the court finds that the public interest requires suspension, the court shall suspend the officer as provided by this chapter.

TEX. LOC. GOV'T CODE ANN. § 87.032 (West Supp. 2013).

Appellant argues the procedures of Chapter 87, under which he was removed from office, are broader than the constitutional provision on which the procedures are based because all felonies are not "high crimes" as described in article XVI of the Texas Constitution. *See* TEX. CONST. art. XVI, § 2; TEX. LOC. GOV'T CODE ANN. §§ 87.031–32. The Texas Supreme Court has addressed a related issue regarding section 87.031 in light of article XVI, section 2. *See generally In re Bazan*, 251 S.W.3d 39, 43–45 (Tex. 2008) (discussing the legislative history of chapter 87). In *Bazan*, the court stated:

This constitutional provision states that: "Laws shall be made to exclude from office . . . [persons] who have been or shall hereafter be convicted of bribery, perjury, forgery, or other high crimes." TEX. CONST. art. XVI, § 2. An individual convicted of a felony is thus ineligible to hold public office whether the conviction comes before or after the individual's election to office. *See id.*; TEX. ELEC. CODE § 141.001(4) (individual convicted of a felony ineligible to hold public office); TEX. LOCAL GOV'T CODE § 87.031 (felony conviction operates as an immediate removal from office); Op. Tex. Att'y Gen. No. H–20 (1973) ("The term 'other high crimes' includes any offense of the same degree or grade as those specifically enumerated, namely felonies.").

*Bazan*, 251 S.W.3d at 41–42.

Appellant contends because his conviction of the felony offense of engaging in organized criminal activity is based on the underlying misdemeanor offense of gambling promotion, a

–21–

lottery conducted for the purpose of raising campaign funds is not a high crime as intended in the constitution. Further, appellant argues the statute conflicts with the constitution because the statute is broader than the constitution and the narrower reading of the constitution must prevail. We disagree. Again, the constitution provides, "Laws shall be made to exclude from office persons who have been convicted of bribery, perjury, forgery, or other high crimes." TEX. CONST. art. XVI, § 2. We do not interpret this constitutional provision as a limitation on more expansive regulation by the Legislature. The constitutional commentary provides:

> This section is a verbatim copy of Art. 7, § 4 of the Constitution of 1845. The constitutional convention of 1845 recognized that Texas was a large area, and many sections thereof were relatively lawless. Furthermore, temptations were enormous, and the persons tempted often had no social position to forfeit, hence the conditions were not the most favorable to virtue.

> It was admitted that although it was impossible to make men moral by statute, yet it was possible to arm good citizens with weapons which would improve their chances in the unceasing conflict with the various forms in which political dishonesty appeared. Therefore this section was placed in the first state constitution and carried over in all successive state constitutions.

TEX. CONST. art. XVI, § 2 interp. commentary (West 1993). The commentary provides the purpose of this constitutional provision as a directive to the Legislature to enact specific laws; it says nothing about limiting the power of the Legislature. Again, as the supreme court has stated, "The term 'other high crimes' includes any offense of the same degree or grade as those specifically enumerated, namely felonies." *Bazan*, 251 S.W.3d at 41–42. After reviewing the Texas Constitution, local government code, and supreme court's analysis, we conclude section 87.032 is not unconstitutional as applied to appellant's suspension from office after his felony conviction for engaging in organized criminal activity. *See* TEX. CONST. art. XVI, § 2; TEX. LOCAL GOV'T CODE ANN. § 87.031; *see also Bazan*, 251 S.W.3d at 44–45; *Lipscomb v. Randall*, 985 S.W.2d 601, 610, n.10 (Tex. App.—Fort Worth, 1999, pet. dism'd) ("In analogous Texas cases involving county officers convicted of crimes, automatic forfeiture under statute pending

appeal has been upheld.") (citations omitted). *Welch v. State*, 880 S.W.2d 79, 82 (Tex. App.—Tyler 1994, writ denied) (holding Welch was properly barred from office after being convicted of a felony because the legislature's power to punish repeated driving while intoxicated as a felony is unquestioned).

Appellant's ninth issue is overruled.

### *Conclusion*

Having resolved appellant's nine issues against him, we affirm the trial court's judgment.

/David Lewis/
DAVID LEWIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

121179F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DERICK DEWAYNE EVANS, Appellant

No. 05-12-01179-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F1001193W.
Opinion delivered by Justice Lewis.
Justices Bridges and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of March, 2014.

/David Lewis/
DAVID LEWIS
JUSTICE

-24-